JORDANOS', INC., Madeline F. Jordano, Howard H. King and Delfina I. King, Helen M. Jordano, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 21894, 21894–A to 21894–C.

United States Court of Appeals Ninth Circuit.

May 28, 1968.

Jerry F. Brown, of Schauer, Ryon & McIntyre, Santa Barbara, Cal., for petitioners.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Howard M. Koff, Attorneys, Department of Justice, Washington, D. C., for respondent.

Before BARNES and BROWNING, Circuit Judges, and SOLOMON,* District Judge.

PER CURIAM:

This case is before us pursuant to section 7482 of the Internal Revenue Code of 1954, which authorizes our review of de-

---

* Hon. Gus J. Solomon, Chief United States District Judge, Portland, Oregon, sitting by designation.

cisions of the Tax Court of the United States. Several taxpayers have petitioned for review of four consolidated Tax Court decisions in favor of the Commissioner of Internal Revenue. The decisions, which concern the petitioners' income tax liability for the years 1958 to 1961, inclusive, turn on a finding that payments made by the corporate petitioner to three of the individual petitioners represented dividends, and not gifts or compensatory pensions.

We think that that finding is not clearly erroneous, and we therefore must affirm the Tax Court's decision. See Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 289, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). That court's Memorandum Findings of Fact and Opinion, T.C. Memo., 1966–218, filed September 30, 1966, and not officially reported, is attached as an appendix to this opinion.

Affirmed.

## APPENDIX

### T. C. Memo. 1966–218

### TAX COURT OF THE UNITED STATES

JORDANOS', INC., ET AL.,[1] Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent.

Docket Nos. 5316–64, 5317–64, 5318–64, 5319–64,

Filed September 30, 1966

*Jerry F. Brown,* for the petitioners.
*James A. Thomas,* for the respondent.

### MEMORANDUM FINDINGS OF FACT AND OPINION.

TANNENWALD, *Judge:*

Respondent asserted deficiencies against the following petitioners in income tax for the years and in the amounts as follows:

| Petitioner | Docket No. | Taxable period ended | Deficiency |
|---|---|---|---|
| Jordanos', Inc. | 5316–64 | June 30, 1959 | $4,336.95 |
| | | June 30, 1960 | 3,682.97 |
| | | June 30, 1961 | 9,912.51 |
| Madeline F. Jordano | 5317–64 | Dec. 31, 1958 | 1,000.83 |
| | | Dec. 31, 1959 | 933.38 |
| | | Dec. 31, 1960 | 818.78 |
| Howard H. King and Delfina I. King | 5318–64 | Dec. 31, 1958 | 990.14 |
| | | Dec. 31, 1959 | 986.38 |
| | | Dec. 31, 1960 | 666.11 |
| Helen M. Jordano | 5319–64 | Dec. 31, 1958 | 535.12 |
| | | Dec. 31, 1959 | 923.09 |
| | | Dec. 31, 1960 | 335.04 |

[1]. The following proceedings are consolidated herewith: Docket No. 5317–64, Madeline F. Jordano; Docket No. 5318–64, Howard H. King and Delfina I. King; Docket No. 5319–64, Helen M. Jordano.

Some issues have been settled by the parties. The remaining issues involve the characterization of payments by the petitioner corporation to the widows of deceased officers:

(1) Did the payments to the individual petitioners (the widows) constitute a deductible business expense to the petitioner corporation under section 162(a)[2] and section 404(a) (5)?

(2) Did the payments in question constitute gifts to the individual petitioners under secton 102?

(3) Were the payments in question in reality a dividend under section 316?

### FINDINGS OF FACT.

Some of the facts are stipulated and are found accordingly.

Jordanos', Inc. (herein referred to as the "Corporation") was incorporated on January 28, 1946, under the laws of California. It has its principal place of business at 35 West Canon Perdido Street, Santa Barbara, and it filed its corporation income tax returns for the taxable years involved herein with the district director of internal revenue, Los Angeles, California. It regularly keeps its books and records and reports its income for Federal income tax purposes on an accrual method of accounting.

Helen M. Jordano is an individual residing at Rosario Park, Star Route, Santa Barbara, California. Madeline F. Jordano is an individual residing at 1625 Overlook Lane, Santa Barbara, California. Howard H. King[3] and Delfina I. King are husband and wife residing at 1217–B East Cota Street, Santa Barbara, California. All the individual petitioners filed their respective income tax returns on the cash basis for the taxable years involved herein with the district director of internal revenue at Los Angeles, California.

The Corporation is a final successor to a partnership started by four brothers, Dominic Jordano, Frank James Jordano, Sr., John Jordano, Sr., and Peter Jordano about 40 years ago. Each brother continued active in the business until his death. The business consists of the ownership and operation of a chain of grocery stores and acting as a wholesaler of meat and produce, as well as beer.

Since its inception, the entire business (save for unimportant minority interests) has been owned and controlled by the Jordano families. With the exception of 1,000 shares of non-voting preferred stock, at all relevant times the Jordano brothers, their wives, their children, and trusts for the benefit of the foregoing, have owned practically all of the common stock of the Corporation.[4] Each of the four family groups owned approximately the same number of shares and the widows had substantial interests within their respective family group.[5]

---

2. All references are to the Internal Revenue Code of 1954.

3. Howard H. King is a party to this proceeding only by reason of having filed joint returns with Delfina I. King.

4. In June, 1947, the four families owned 600 shares constituting all of the issued and outstanding shares. In January, 1957, there was a 20 for 1 split. During the taxable years, the four families owned 11,060 shares. No explanation was submitted with respect to the 940-

share differential but the stipulation of facts states that except for the preferred shares, the Corporation "has been *solely owned and controlled* at all times by the four Jordano brothers, or their wives and children." [Emphasis added.]

5. The family of John, Sr., owned 2,450 shares, of which Helen had a life interest in 1,000 shares; the family of Dominic owned 2,810 shares, of which Madeline owned 1,380 shares outright; the family

Peter Jordano, one of the founding brothers, died in 1931. At his death he was a director and shareholder of a predecessor corporation. At that time, the predecessor corporation commenced monthly payments to his widow, Delfina, in the amount of $370 per month. Delfina later married Howard H. King.

Dominic Jordano, also a founding brother, died in 1944. At the time of his death, he was a director, shareholder, and the president of a predecessor corporation. At that time, the predecessor corporation commenced similar monthly payments of $370 to his widow, Madeline.

Prior to 1953 there had been no formal resolution by the board of directors of the Corporation in regard to the payments to the then-widows. In June, 1953, the board, noting the payments in the past to Delfina and Madeline and purporting to recognize their need for such payments, authorized continuing the payments at the same rate of $370 per month through June 30, 1954. In December, 1955, the board ratified the payments since June 30, 1954 and authorized their continuance without definite time limit but subject to the Corporation's being financially able and to the approval of the stockholders, and until further action by the board.

On January 20, 1956, John Jordano, Sr., a third founding brother, died. At his death he was a director, shareholder, and the president of the Corporation. Shortly after his death, the Corporation paid his widow, Helen, a cash payment in the amount of $5,000. The payment was entered on the books and records of Jordanos', Inc. as "Employees Death Benefit." On February 1, 1956, the board passed a resolution authorizing payment at the rate of $370 per month to his widow from and after April 20, 1956, also without definite time limit but terminable at the will of the Corporation, and subject to stockholder approval and the Corporation's being financially able.

None of the Corporation's other managerial employees were at any time aware of the payments to the three widows.

Since the death of John Jordano, Sr., and through the time of trial, all three widows have continued to receive payments from the Corporation at the rate of $370 per month. Prior to the years in question, the Corporation had paid approximately $115,000 to Delfina, $58,000 to Madeline, and $13,000 to Helen. None of the widows has included the payments in her returns filed for the years in question or for any prior years. Each contends that the payments constitute nontaxable gifts.

Prior to July 1, 1953, the payments to the widows were carried on the books of the Corporation as indebtedness to it. For the fiscal year ended June 30, 1954, the payments were charged directly to earned surplus as "pension payments." For the remaining fiscal years through June 30, 1960, the payments were charged to a nonoperating expense account and similarly characterized. The Corporation did not claim a deduction on its income tax returns for the payments for any year before its fiscal year ended June 30, 1961. For that year it deducted the payments as a business expense. It now contends that it is entitled to a business expense deduction for each of the years in question.

In the three board resolutions authorizing the payments, it was recited that the Corporation was under no legal obligation to the widows, that the payments were "wholly gratuitous" and were "based wholly upon [the widows'] needs and their lack of other adequate means of support." In the operative parts of the resolutions, the payments were characterized as "gratuities." Though none of the widows was ever a director, at the time of each resolution the board consisted solely of the surviving founding brothers and their sons.

The following adjusted gross income was reported on the widows' respective income tax returns.

of Peter owned 2,800 shares, of which Delfina owned 1,360 shares outright;

and the family of Frank, Sr., owned 3,000 shares.

| Name | 1958 | 1959 | 1960 |
|---|---|---|---|
| Delfina | $7,866 | $7,806 | $3,543 |
| Madeline | 2,091 | 2,182 | 2,854 |
| Helen | 892 | 3,770 | 642 |

In 1958, Delfina was 65 years old, Madeline was 63, and Helen was 54.

The financial condition of the widows as of June 30, 1961 was approximately as follows:

| Assets | Madeline | Delfina | Helen |
|---|---|---|---|
| Jordanos', Inc. stock | $138,000 | $136,000 | Life estate in 1,000 shares |
| Other stock | 37,000 | 5,000 | None |
| Cash in bank | 5,000 | 6,000 | $14,000 |
| Loans | 7,500 | 6,055 | None |
| Real property | 35,000 | 15,000 | 60,000 |
| Insurance policy (face value) | None | 5,000 | None |

The following table sets forth the gross receipts, net income, earned surplus, and dividends paid by the Corporation for the taxable years after June 30, 1953.

| Year Ended | Gross Receipts | Net income* after taxes | Earned Surplus | Common stock dividends |
|---|---|---|---|---|
| 6-30-54 | $ 7,811,178 | $30,032 | $420,877 | $9,344 |
| 6-30-55 | 8,041,630 | 29,393 | 436,611 | 9,088 |
| 6-30-56 | 8,373,592 | 48,797 | 470,071 | 9,088 |
| 6-30-57 | 8,801,346 | 34,645 | 468,589 | 4,500 |
| 6-30-58 | 10,519,276 | 34,376 | 490,590 | 8,848 |
| 6-30-59 | 13,543,719 | 62,959 | 540,166 | 8,848 |
| 6-30-60 | 15,487,069 | 13,798 | 541,072 | 8,848 |
| 6-30-61 | 16,691,678 | 62,469 | 592,109 | 8,848 |
| 6-30-62 | 20,755,624 | 69,938 | 671,298 | 8,848 |

*Except for fiscal year ended June 30, 1954, does not include payments made to the widow petitioners.

The payments to the widows constituted a distribution of earnings and profits and therefore a dividend by the Corporation to three of its major shareholders.

---

## OPINION.

The petitioners claim that the payments herein were gifts but nevertheless deductible by the Corporation as an ordinary and necessary business expense under section 162(a); tangentially, they argue that, if the payments are found to be compensation for services, the requirements of section 162(a) (1) would be satisfied and the payments would be deductible by the Corporation under section 404(a) (5),[6] even though

6. Respondent concedes that if it is found that the requirements of section 162(a) have been met, the payments would be deductible under section 404(a) (5).

the payments would then be taxable income to the individual petitioners. Respondent counters with the assertion that, in reality, the payments in question were a distribution of earnings and profits and therefore a dividend under section 316, with the result that they are taxable income to the individuals and not deductible by the Corporation. We hold for respondent.

■ The issue of compensation versus gift versus dividend, particularly where distributions to widows of deceased employee-stockholders of closely held corporations are involved, is a knotty one. Essentially, it is a question of fact to be resolved through the "application of the fact-finding tribunal's experience with the mainsprings of human conduct" taking into account the "nontechnical nature of the statutory standard, the close relationship of it to practical human experience and the multiplicity of relevant factual elements, with their various combinations * * *." See Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 289, 80 S.Ct. 1190, 1199, 4 L. Ed.2d 1218 (1960).

■ At the outset, we can readily dispose of any claim that the payments represent compensation for services. The record does not reveal that the widows themselves rendered any services to the Corporation. There is no evidence that the Corporation had established a plan for payments to families of deceased employees; indeed, the Corporation's other managerial employees were not even aware of the fact that payments were being made to the widows of the deceased brothers. Cf. Champion Spark Plug Co., 30 T.C. 295 (1958), affd. 266 F.2d 347 (6th Cir. 1959). Nor is there any evidence that the payments were made pursuant to any contractual obligation of the Corporation. Cf. I. Putnam, Inc., 15 T.C. 86 (1950); Seavey & Flarsheim Brokerage Co., 41 B.T.A. 198 (1940). The testimony as to the motivations of the board of directors is skimpy. Only one of the five directors testified (he was petitioner's sole witness) and, although on direct examination he made some general references to the effect that the board had in mind compensation for past services, he also testified that the payments were directed toward meeting the financial needs of the widows and on cross-examination he categorically denied that the payments were intended as compensation. The corporate resolutions make no reference to past services. Finally, there is no evidence whatsoever as to the value or extent of the services actually rendered to the business by the deceased brothers or the compensation paid to them during their lives, from which we might have determined whether, even assuming the characterization of additional compensation could be applied to the payments, they were reasonable in amount. Fifth Avenue Coach Lines, Inc., 31 T.C. 1080 (1959), modified on other grounds 281 F.2d 556 (2nd Cir. 1960), certiorari denied 366 U.S. 964, 81 S.Ct. 1915, 6 L.Ed.2d 1256; McLaughlin Gormley King Co., 11 T.C. 569 (1948). Under the circumstances we hold that the payments did not constitute compensation for services or otherwise reflect any reasonable benefit to the Corporation.

■ As to the contention that the payments were gifts, we note, in the first instance, that we are not bound by the classification of gratuity contained in the corporate resolutions; it is the substance of the action taken, not the form of the designation, which controls. Bounds v. United States, 262 F.2d 876, 882 (4th Cir. 1958); Lengsfield v. Commissioner of Internal Revenue, 241 F.2d 508 (5th Cir. 1957), affirming a Memorandum Opinion of this Court; Charles Bispham Levey, 26 B.T.A. 889 (1932). Although the Corporation purported to make the payments out of a recognition of the financial needs of the widows, petitioner's sole witness, who was president and the chief executive officer of the Corporation, indicated relative unfamiliarity with their actual financial status. The only direct evidence as to such sta-

tus is their income tax returns and a stipulation as to their financial condition as of June 30, 1961, the end of the period in question. Even if we assume that the stipulation fairly reflects their financial condition throughout the period, we are left in the dark as to the nature of their needs and whether they had other resources, e. g., nontaxable income such as social security payments. In this latter connection we note that the payments of $370 monthly have continued to be made to Delfina for over 30 years and to Madeline for over 20 years. We cannot assume that their respective resources and needs continued unchanged throughout such long periods. Nor can we assume that the situation of all three widows was at all times identical. Finally, it is not without significance that until 1953 the Corporation reflected the payments as indebtedness to it.

On the other side of the coin, we have the facts that at all times the Corporation had sufficient earnings and profits available for dividends, that the dividends actually paid constituted only a small fraction of its net income after taxes, that the payments herein were made without limitation in time and over long periods, and, most importantly, that practically all, if not all, of the voting stock was held by the four families.

Against this background, the text of our decision has been written in Lengsfield v. Commissioner of Internal Revenue, supra, a case understandably ignored by petitioner. On facts startlingly similar to those involved herein, the Court of Appeals held that the payments constituted dividends and stated at pp. 510–511 of 241 F.2d:

> * * * There were substantial earnings and profits available during the taxable years as a source for making the payments and, when made, they were charged on the corporation's

books to the surplus account. The taxpayers were all shareholders of the corporation at the time they received the payments in question. The payments to taxpayers Ruth and Coralie Lengsfield were consented to by all the shareholders prior to the adoption of the resolutions whereby the payments were voted, and no question has ever been raised by any shareholder of the corporation as to the authority of the board to make the payments. Moreover, the taxpayers-recipients were, as the Tax Court found, majority (63 percent) shareholders, most of the others were close relatives, and two were drawing large salaries from the corporation. We think that, under these circumstances, the payments in question directly respond to the definition of a taxable dividend contained in the Treasury Regulations 111. The fact that the resolutions authorizing the payments characterized them as a "gratuity" for past services is not determinative of the nature of the distribution. * * * Furthermore, there is no requirement that a particular distribution be termed a dividend, or that there be a formal dividend declaration, or that all stockholders share in dividend distributions. * * *

To the same effect are Schner-Block Co., Inc. v. Commissioner of Internal Revenue, 329 F.2d 875 (2nd Cir. 1964), affirming a Memorandum Opinion of this Court, and Carson v. United States, 317 F.2d 370, 161 Ct.Cl. 548 (1963). Neither the cases cited by petitioner nor those which we have examined on our own initiative dictate any departure from, or modification of, this text as applied to the facts herein.

■ The widows herein were all members of a closely-knit family group. If they had not been paid by the Corporation, it seems clear that whatever financial needs they had would necessarily have been met by the earning members

of the group—i. e., the surviving brothers and sons, who operated the business. Unquestionably, the latter decided that the best way to relieve themselves of any such burden was to have the Corporation make the payments.[7]

We hold that the payments herein constituted dividends.

Decisions will be entered under Rule 50 in Docket Nos. 5316-64 and 5319-64.

Decisions will be entered for respondent in Docket Nos. 5317-64 and 5318-64.

## TAX COURT OF THE UNITED STATES
## WASHINGTON

## DECISION

Pursuant to the determination of the Court, as set forth in its Memorandum Findings of Fact and Opinion, filed September 30, 1966, it is

ORDERED AND DECIDED: That there are deficiencies in income tax for the calendar years 1958, 1959, and 1960 in the respective amounts of $1,000.83, $933.38, and $818.78.

Theodore Tannenwald, Jr.
Judge.

ENTERED OCT 4 1966

SERVED OCT 4 1966

---

7. Frank Jordano, Sr., died in September, 1965, but similar payments were not made to his widow. We attach no significance to such situation, particularly since it appears that Frank's widow received substantial insurance proceeds which were financed or arranged for, in one way or another, by the Corporation and, for aught that appears, may have been nothing more than a substitute means of providing his widow with the same benefits as the Corporation paid directly to the other widows.