VUKASOVICH, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Vukasovich, Inc. v. Commissioner
Docket No. 1615-83.
United States Tax Court
T.C. Memo 1984-611; 1984 Tax Ct. Memo LEXIS 61; 49 T.C.M. (CCH) 147; T.C.M. (RIA) 84611; November 21, 1984. John F. Hopkins, for the petitioner. Lin Murphy, for the respondent. GERBER MEMORANDUM OPINION GERBER, Judge*: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year ended August 31, 1978, in the amount of $116,507. The parties have made certain concessions that leave for our consideration the following issues: (1) Whether petitioner recognized income under the terms of a release that settled litigation involving petitioner; and (2) whether payments required to be made under the release were in substance payments on the principal of a note so as to be non-deductible expenditures. *62 The parties in this case fully stipulated to the facts. Their stipulation of facts, including exhibits numbered 1-A through 8-H, is incorporated by this reference. Petitioner Vukasovich, Inc. (Vukasovich), is a corporation organized and existing under the laws of California. Vukasovich filed its Federal corporate income tax return for the taxable year ended August 31, 1978, with the Internal Revenue Service Center in Fresno, California. On August 24, 1973, Vukasovich entered into a written agreement with the Sunset Cattle Company (Sunset), a California corporation, under which Sunset agreed to purchase 4,082 steers on behalf of Vukasovich and to place them in a commercial feedlot for fattening. Sunset also agreed to sell the steers on behalf of petitioner when they were ready for market. In exchange for its services, Sunset was to receive, both at the time of purchase and sale, a fixed rate per pound of animal weight. Sunset purchased the steers on behalf of Vukasovich from another California corporation, Coit and Canning Cattle Co., a division of Coit Ranch, Inc. (Coit), for $1,636,042. On August 24, 1973, Vukasovich entered into a contract with Coit, which provided that *63 Coit would feed and care for the steers until they were ready for market. Coit also agreed to secure financing for the steers through Crocker National Bank of Fresno, California. Vukasovich agreed that Coit could purchase feed in advance of current feeding requirements. The total amount required to be paid by Vukasovich to finance the above agreements was $2,404,582, of which $677,617 was prepaid feed expense, $90,923 prepaid interest expense, and $1,636,042 the cost of the steers. Vukasovich put up $408,200 of its own money and financed the remainder of the purchase price with the proceeds of a $1,996,382 loan from Crocker National Bank. In connection with this transaction, Vukasovich executed a promissory note to Crocker National Bank on August 28, 1973, for $2,100,000. The $2,100,000 secured a line of credit of which only $1,996,382 was actually borrowed. Coit guaranteed the note. On its return for the taxable year ended August 31, 1973, Vukasovich deducted feed expenses of $677,617 and interest expenses of $90,923. On its return for the taxable year ended August 31, 1974, Vukasovich reported as ordinary income $122,933 from the sale of the steers (selling price *64 of $1,758,975 less cost of $1,636,042). Overall, Vukasovich claimed a net loss of $645,607 for the taxable years ended August 31, 1973 and August 31, 1974, on the transaction (cost of steers plus prepaid feed expense plus prepaid interest expense less selling price of steers). Vukasovich applied the entire sales proceeds of $1,758,975 against the $1,996,382 loan from Crocker National Bank. Vukasovich did not pay the balance due the bank of $237,407; Coit did. On August 12, 1974, Vukasovich filed a complaint against Coit in the United States District Court for the Northern District of California. The complaint sought recision of the August 24, 1973, contract and damages. Vukasovich alleged, among other things, that Coit had failed to market the steers at the prime market rate. Coit cross-complained for $237,406.58 on the promissory note, which had been assigned to it by Crocker National Bank. On October 7, 1977, Vukasovich, Coit, and Sunset entered into a general release. Pursuant to the agreement, Vukasovich released Coit and Sunset from claims arising from the August 1973 transactions. Coit similarly released Vukasovich and Sunset, and Sunset similarly released *65 Vukasovich and Coit. Vukasovich agreed to pay Sunset the sum of $210,599.58 plus interest. Of this $210,599.58 payment, $10,599 was compensation for Sunset's services as buying and selling agent for Vukasovich. The $10,599 payment satisfied Vukasovich's obligations under its August 24, 1973, contract with Sunset. Sunset agreed to pay Coit the sum of $200,000 plus interest. The release provided that Vukasovich's payments to Sunset and Sunset's payments to Coit would follow the same payment schedule. Payments were identical in amount except for the last payment under the schedules: Vukasovich's last payment to Sunset was $10,599 greater than Sunset's last payment to Coit. Vukasovich guaranteed Sunset's settlement payments to Coit. As security for its guarantee, Vukasovich agreed to provide Coit with a stipulation for entry of judgment against Vukasovich in the event that either Vukasovich or Sunset failed to timely comply with any of the payment obligations under the release. As a condition of the general release and guarantee by Vukasovich, Coit agreed to abandon any claims it might have on the assets of Sunset, except to the extent Sunset received monies from Vukasovich *66 under the release. In the event of a default in payment by Sunset, the release limited Coit's remedy to entering the stipulation for entry of judgment against Vukasovich, obtaining judgment against Vukasovich, and obtaining judgment against Sunset to the extent of any monies it had received from Vukasovich under the release. On its return for the taxable year ended August 31, 1978, Vukasovich showed an increase in retained earnings of $237,407, and characterized that amount as "settlement disputed loan - non-income." On the same return, Vukasovich deducted the $210,599 payment to Sunset as a "damage claim settlement." Respondent issued to Vukasovich a statutory notice of deficiency for the taxable year ended August 31, 1978. Respondent included as income from the discharge of indebtedness the $237,407 shown on Vukasovich's return as "settlement disputed loan - non-income." On the notice of deficiency, respondent stated its alternative position that if it were determined that Vukasovich did not realize income from the discharge of indebtedness, then $200,000 of the $210,599deduction claimed as a "damage claim settlement" should not be deductible. *67 Gross income includes income from the discharge of indebtedness. Section 61(a)(12). [1] This general principle was established in United States v. Kirby Lumber Co.,284 U.S. 1 (1931). In Kirby Lumber Co., the corporation purchased at a discount in the open market bonds it had earlier in the year issued at par value. The issue before the Supreme Court was whether the difference in price was gain taxable to the company. The Court held that the taxpayer had made a clear gain and realized income. The dealings of the corporation, the Court noted, freed assets previously tied up by the obligation on the bonds. In the matter before us, petitioner and respondent dispute whether the $237,404 shown on petitioner's return as a non-income item constitutes income from the discharge of indebtedness.For the reasons stated below, we find that petitioner does not have $237,407 in cancellation of indebtedness income. Under the terms of the general release, petitioner paid $210,599 to Sunset, which *68 paid $200,000 to Coit. The inference is inescapable that Vukasovich in substance, if not in form, made an indirect loan payment of $200,000 to Coit, in exchange for which Coit cancelled Vukasovich's obligation on its note. We reach this conclusion because: (1) The record does not suggest that the $210,599 payment to Sunset was a reasonable amount spent to settle litigation that involved or might involve Sunset and Vukasovich; (2) the record similarly does not establish that Sunset's $200,000 payment to Coit, a sum that approximated Vukasovich's indebtedness on its note, was reasonable in view of the consideration Sunset received; (3) Vukasovich's scheduled payments to Sunset were identical (except for a difference in the amount of the final payment, due to the satisfaction of Vukasovich's debt for Sunset's services) in every respect with Sunset's scheduled payments to Coit; (4) Vukasovich guaranteed all settlement payments that were to be made by Sunset to Coit and (5) Coit's remedies in the event of default by Sunset were limited to entering the stipulation for entry of judgment against Vukasovich and obtaining judgment against Sunset only to the extent of any monies received *69 from Vukasovich under the settlement agreement. Petitioner maintains that the general release was an arm's length agreement among unrelated parties and should not be recast as a mechanism for the indirect payment of an obligation under a loan. This Court is not bound by the language of the general release to uncritically accept that the transactions among Vukasovich, Coit, and Sunset related therein are as petitioner purports them to be. See Jordanos', Inc. v. Commissioner,396 F.2d 829, 834 (9th Cir. 1968), affg. per curiam a Memorandum Opinion of this Court; Rabiner v. Bacon,373 F.2d 537, 539 (8th Cir. 1967). The substance of a transaction and not its form governs its treatment for tax purposes. Commissioner v. Court Holding Co.,324 U.S. 331, 334 (1945). We find that in substance the general release was a device for the indirect partial payment of Vukasovich's obligation to Coit. We conclude that there was a repayment of $200,000 of indebtedness on an outstanding obligation of $237,407 and, therefore, cancellation of *70 $37,407 of debt. The question that logically follows is whether the $37,407 unpaid portion of the note is income taxable to petitioner. We conclude that it is not, on the basis of Bowers v. Kerbaugh-Empire Co.,271 U.S. 170 (1926). In Kerbaugh-Empire, a New York corporation borrowed through a number of loans German marks from a bank. The corporation used the money to finance the operation of its subsidiary in the performance of construction contracts. The subsidiary operated at a loss. Due to a decline in the value of the mark, the parent corporation was able to discharge its loan obligation at a profit. The loss on the construction contracts financed by the loan was greater than the profit on repayment of the loan. The Commissioner held the difference between the amount borrowed and the amount repaid to be income. Reasoning that "the mere diminution of loss is not gain, profit, or income," Bowers v. Kerbaugh-Empire,supra at 175, the Court held that repayment of the loan did not produce taxable gain. The $37,407 cancellation of indebtedness is not income under the Kerbaugh-Empire rule. Petitioner experienced an overall loss *71 on its purchase, upkeep, and sale of steers. The debt incurred by petitioner was clearly tied to its losses in its dealings in steers, and not to petitioner's other business activities. Compare Church's English Shoes, Ltd. v. Commissioner,229 F.2d 957 (2d Cir. 1956), affg. 24 T.C. (1955) (even though taxpayer lost money generally in its business, taxpayer held to recognize income where a loss was not established specifically on items purchased with borrowed amounts later repaid at a profit); Willard Helburn, Inc. v. Commissioner,214 F.2d 815 (5th Cir. 1954), affg. 20 T.C. 740 (1953) (taxpayer held to recognize income where loan profitably repaid and loss on transactions not established). Respondent contends that because of subsequent case law Kerbaugh-Empire is no longer valid authority. The case has been termed "a frequently criticized and not easily understood decision." Willard Helburn, Inc. v. Commissioner,supra at 819. With respect to borrowing and repayment in the same foreign currency, the vitality of its holding is said to have been lost. National Standard Co. v. Commissioner,80 T.C. 551, 568 (1983) *72 (Tannenwald, J. dissenting), on appeal (6th Cir. 9/26/83). Petitioner is nevertheless correct in asserting that the principle established by Kerbaugh-Empire, that there is no income from the cancellation of an indebtedness used to finance a transaction that results in a loss greater than the profit on repayment of the loan, has never been repudiated by the Supreme Court. In deciding Kirby Lumber Co., the Court distinguished Kerbaugh-Empire on the basis that the taxpayer in Kirby Lumber Co. had a gain, while the taxpayer in Kerbaugh-Empire had an overall loss. United States v. Kirby Lumber Co.,supra at 3. We accordingly are bound to follow the rule established in Kerbaugh-Empire.
Respondent contends that the tax benefit rule also requires inclusion of petitioner's cancellation of indebtedness income. The rule requires that income be recognized when an event occurs in a subsequent year that is "fundamentally inconsistent with the premise on which [a deduction taken in an earlier year] was initially based. That is, if that event *73 had occured within the same taxable year, it would have foreclosed the deduction." Hillsboro National Bank v. Commissioner,460 U.S. 370, 383-384 (1983). For the taxable year ending August 31, 1973, Vukasovich took deductions for prepaid interest and feed expenses. Partial forgiveness of Vukasovich's indebtedness on the principal amount of its note is not fundamentally inconsistent with the deductions taken. A different result would obtain if the ultimate payment for prepaid feed and interest expenses were in an amount that was less than the total amount deducted as business expenses. [2]
We do not equate non-payment of part of the loan principal *74 with non-payment of the deducted expenses. The parties have provided insufficient evidence for us to determine whether or not the deducted expenses were in fact fully paid. We accordingly do not find that petitioner recognized income under the tax benefit rule. Having held that petitioner did not recognize income under the release, we move on to consider whether the deduction claimed for the "damage claim settlement" should be allowed. The parties stipulated that $10,599 of the $210,599 payment to Sunset was compensation for Sunset's services as buying and selling agent. As amounts paid in settlement of business-related litigation are deductible, Dancer v. Commissioner,73 T.C. 1103, 1108 (1980); International Shoe Co. v. Commissioner,38 B.T.A. 81, 97 (1938); we hold that petitioner may deduct $10,599. As for the remaining $200,000, petitioner bears the burden of showing its entitlement to the deduction. Rockwell v. Commissioner,512 F.2d 882, 886 (9th Cir. 1975), affg. a Memorandum Opinion of this Court, and it has failed *75 to do so. A deduction is not permitted on account of the repayment of the principal amount of a loan. Crawford v. Commissioner,11 B.T.A. 1299, 1302 (1928). Consistent with the discussion above, we hold that petitioner cannot deduct as an ordinary and necessary business expense $200,000 of its $210,599 payment to Sunset. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
*. By order of the Chief Judge, this case was reassigned from Judge C. Moxley Featherston to Judge Joel Gerber↩ for disposition.
1. The statutory reference is to the Internal Revenue Code of 1954, as amended and in effect for the taxable year at issue.↩
2. Hillsboro National Bank v. Commissioner,460 U.S. 370↩ (1983), gives the following example of a fundamentally inconsistent event: A calendar-year taxpayer makes a rental payment on December 15 for a 30-day lease deductible in the current year. The premises are destroyed by fire on January 10 and the taxpayer's rental payment is refunded under the terms of the lease. The tax benefit rule requires the taxpayer in these circumstances to recognize income on the destruction of the premises.