## ANDERSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 1241.

Circuit Court of Appeals, Tenth Circuit.
Jan. 18, 1936.

A. E. Pearson, of Oklahoma City, Okl. (Walter G. Moyle, of Washington, D. C., on the brief), for petitioner.

Arnold Raum, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Warren F. Wattles, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

Two items in Anderson's income tax return for 1929 have been before the Board of Tax Appeals and are here on a petition to review. One concerns an item of $142,-000 received by the taxpayer from the sale of certain mineral interests which he had owned for more than two years, and which he returned for taxation as capital gain. The Board held, four members dissenting, that the gain was taxable as ordinary income. After the decisions of Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L. Ed. 199, and Alexander v. King (C.C.A.10) 46 F.(2d) 235, 74 A.L.R. 174, the Commissioner ruled that an outright sale of mineral interests, as contradistinguished from a lease with royalties reserved, should be treated as a sale of a capital asset. G.C. M. 12118, XII-2 C.B. 119. Respondent therefore now confesses error in the ruling on this item and consents to a revision of the tax liability accordingly. In this position we concur, for the conveyances are deeds and not leases.

The item remaining in dispute is a deduction of $19,112 (reduced by concession to $14,000), which the taxpayer asserts represents a loss incurred in his business, not compensated by insurance. Revenue Act 1928, § 23 (e) (1), 45 Stat. 799.

Anderson is a farmer who also owned and managed some buildings in Earlsboro which he rented, and from which rentals he returned $5,194.40 as income during the year in question. In order to rent a building for a grocery store, he wanted to put in a cement floor. He was driving from his home to Ardmore 110 miles away to hire a man to do the work when his car collided with another, a man was killed and his car damaged. Anderson was sued in the state court, a judgment recovered, compromised later for $19,000 and paid during the taxable year. He also paid $4,112 for court costs, witnesses' fees, and other expense. Of this $23,112 paid out, he was reimbursed $5,000 from his insurance, leaving an out-of-pocket loss of $18,112. The Board made no special findings, as it is no longer required to do; but in its opinion shortly disposed of the controversy as follows:

"The amount claimed represents the uninsured part of his liability for damage for death resulting from his negligent driving of his own automobile. If allowable at all, such a loss must be the proximate result of the business (cf. Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L. Ed. 505); and such a finding of fact is not justified by the evidence. The petitioner, the sole witness, testified that in order to procure the prompt services of a laborer

to do some cement work in the floor of a building of which he was the owner and lessor, he was driving his own Cadillac car a distance of 220 miles in the nighttime with a friend when the collision occurred for which he was liable. We think the payment of the judgment is too remote to be characterized as a loss incurred in business."

This leaves us in doubt as to the reason for disallowing the deduction. Respondent suggests two theories upon which the Board may have acted. If the order is right on any theory, it should be affirmed.

1. It is argued that the Board did not believe the accident occurred while on a business trip, and it is said that it is incredible that one would drive so far at night to procure a workman. A hundred and ten miles is not a long drive as distances are measured out here,—two hours, or a little more, in the Cadillac he was driving. Nor is night driving unusual, particularly for a farmer who manages many farms; on the contrary, it is the time when farm work cannot be done. Why drive so far to procure the services of a cement worker? Anderson had two, and perhaps three, good reasons for wanting this particular man. First, Anderson knew he was a good workman; second, he owed Anderson money which he could thus collect; and, possibly, a colored man cannot always employ a white mechanic in eastern Oklahoma.

There is nothing inherently incredible about Anderson's story. Alleged discrepancies in his testimony are pointed out, chief among which is the statement that he paid out something like $19,000, while his counsel only claim a deduction of $14,000. But Anderson was nearer right than his counsel, for his counsel overlooked the item of $4,112 in court costs and expenses. His uncompensated loss was $18,112 as we read the record. Anderson did speak of 1927 instead of 1928 at one time; but such a slip after a lapse of five years happens with all of us and does not brand him as a perjurer. Furthermore, respondent was advised of this claim on April 15, 1930. The trial was on November 9, 1933. The judgment and the supporting proof were matters of public record. The respondent, with a corps of trained inspectors at his command, had three and a half years to ascertain the facts. If Anderson's story was not true, undoubtedly respondent would have adduced the facts before the Board. Since no syllable of proof was offered to contradict Anderson, there is no reason to disregard his evidence. Nor is there anything in the record even to suggest that the Board disregarded the only evidence before it.

2. It is argued that the Board may have intended to find that the accident resulted from Anderson's willful or anti-social conduct, such for example as driving while drunk; such conduct is likened to the deliberate shooting of another.

■ Deductions are allowable for losses arising from ordinary mishaps on the highway even though caused, as they generally are, by negligence of the driver. The Commissioner has ruled that damages to a pleasure car may be deducted if caused by negligence of the taxpayer, but not if caused by his willful act. Art. 171, Regs. 74. Cf. Shearer v. Anderson (C.C.A.2) 16 F.(2d) 995, 51 A.L.R. 534. A merchant may deduct losses from litigation for personal injuries to others arising from operating his delivery trucks. C.B.V.-1, p. 226, overruling C.B.IV-1, p. 140.[1] The Supreme Court has approved; in Kornhauser v. United States, 276 U.S. 145, 153, 48 S. Ct. 219, 220, 72 L.Ed. 505, the subject of deducting losses ensuing upon litigation was explored and the following rules laid down:

"The Solicitor of Internal Revenue in a recent opinion has held that legal expenses incurred by a doctor of medicine in defending a suit for malpractice were business expenses within the meaning of the statute. In the course of the opinion it was said that such expenditures were as much ordinary and necessary business expenses as they would be if made by a merchant in defending an action for personal injuries caused by one of his delivery automobiles, and that in the latter case the deduction would be allowed without question. C.B. V.-1, p. 226. * * *

"The basis of these holdings seems to

---

[1] Paul and Mertens, in their recent comprehensive text on Income Taxes, Vol. 3, p. 49, summarize the rule as worked out by the Commissioner, the Board, and the courts, as follows:

"Thus, it may be said that the cost of defending or prosecuting damage suits caused by acts done in the ordinary course of business is deductible; the same is true of the expense of negotiating a settlement."

460

be that where a suit or action against a taxpayer is directly connected with, or, as otherwise stated (Appeal of Backer, 1 B.T.A. 214, 216), proximately resulted from, his business, the expense incurred is a business expense within the meaning of section 214 (a), subd. (1), of the act. These rulings seem to us to be sound and the principle upon which they rest covers the present case."

Neither the Commissioner in his Regulations, the Solicitor in his opinion, nor the Supreme Court in its decision, limits the applicable rule to judgments recovered on the doctrine of respondeat superior. The cited Regulation allows the deduction where the loss results "from the faulty driving of the taxpayer"; the Supreme Court and the Solicitor do not specifically refer to the personal negligence of the taxpayer, but both use broad language not limited to accidents occurring when a servant is driving. That deductions bottomed on negligence are allowed at all negatives the idea that a negligent act can never be directly connected with trade or business. It is true that a chauffeur is not employed to commit a negligent act; nor is careless driving technically a part of any business. But automobiles are used in the conduct of many businesses, and careless and momentary lapses by drivers seem to be inseparable incidents to driving cars, both by employees and owners. In allowing deductions for losses so occasioned, the law but recognizes realities, and keeps in step with the doctrine that taxation is a practical matter. The test laid down by the Supreme Court is whether the litigation is directly connected with or proximately resulted from the business. All the evidence in this record discloses that the accident was so connected.

If the Board had found the accident resulted from the willful act or anti-social conduct of the taxpayer, we would be impressed with the argument that, by analogy, the same distinction should prevail in case of damage to others as is applied to damages to the taxpayer's own car by the cited Regulation. But there is no such finding. On the contrary, in its summary disposition of this claim, the Board found that the damages resulted from his "negligent" driving of the car.

This court cannot make a contrary finding. Our task is ended when we ascertain whether a finding is supported by substantial evidence, and whether the law is rightly applied to the facts found. Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343; Helvering v. Taylor, 293 U.S. 507, 511, 55 S.Ct. 287, 79 L.Ed. 623; Williams v. Commissioner (C.C.A.3) 79 F.(2d) 518; Doernbecher Mfg. Co. v. Commissioner (C.C.A.9) 80 F.(2d) 573; G. &. K. Mfg. Co. Helvering, 56 S.Ct. 276, 80 L.Ed. ——. This finding of negligence negatives the contention that the damage was occasioned by the willful or intentional act of Anderson. Negligence and willfulness are mutually exclusive terms. "Negligence is negative in its nature, implying the omission of duty, and excludes the idea of willfulness." Cleveland, C., C. & St. L. R. Co. v. Tartt (C.C.A.7) 64 F. 823, 826. "Negligence involves the absence of willful injury, and is an unintended breach of duty, resulting in injury to the property or person of another." The Strathdon (D.C.N.Y.) 89 F. 374, 378. "Negligence and willfulness are the opposites of each other. They indicate radically different mental states." Standard Marine Ins. Co. v. Nome Beach L. & T. Co. (C.C.A.9) 133 F. 636, 647, 1 L.R.A. (N.S.) 1095. "It therefore excludes conduct which creates liability because of the actor's intention to invade a legally protected interest of the person injured or of a third person." Restatement, Torts, § 282 (c).[2] Neither side has directly attacked this finding, although respondent in his brief inferentially suggests that we substitute therefor a finding of willfulness. In the absence of a proper challenge to the finding, we do not reach the question whether it finds support in the record brought to this court. While the burden before the Board was upon Anderson to overcome the commissioner's ruling, the Board, by finding the damage resulted from negligence, has found that the burden was carried.

The order is reversed

---

[2] In Words and Phrases, First, Second, Third, and Fourth Series, under the heading Negligence, and the subheading Willfulness Distinguished, are gathered cases from thirteen states holding that "negligence and willfulness are incompatible," and "negligence and willfulness are opposite terms." No cases to the contrary are cited. To the same effect, see Shearman & Redfield on Negligence (5th Ed.) § 5.