OPINION. Black, Judge: The parties are in agreement that $59,211.11 of the $74,738.30 which petitioners received in • compromise of their judgment against Skinner & Eddy represented income to petitioners. Petitioners had no unrecovered basis of cost of their oil and gas leases on which they were operating. Therefore, after the deduction of the expenses of their lawsuit, the remainder of the amount which they received represented gain to them. Petitioners contend that the $59,211.11 represents gain from involuntary conversion of property owned by petitioners and used in their trade or business and is taxable as long-term capital gain under the provisions of section 117 (j), Internal Revenue Code of 1939. Respondent contends that under the facts which have been stipulated, section 117 (j) is not applicable and that the $59,211.11 is taxable as ordinary income under the provisions of section 22 (a), Internal Revenue Code of 1939. Section 117 (j), upon which petitioners rely, is printed in the margin.[1] Petitioners, in support of their contention that section 117 (j) is applicable, cite Chesson v. Commissioner, 57 F. 2d 141, for the proposition that oil and gas in place are a part of the realty. Petitioners also in their brief refer to I. T. 3693, 1944 C. B. 272. In that I. T., it is held that— The interest of a lessee in oil and gas constitutes an interest in “real property” for Federal income tax purposes. Certain leasehold interests sold by the M Company constitute “real property used in the trade or business of the taxpayer” within the meaning of section 117 (a) (1) of the Internal Revenue Code, as amended by section 151 (a) of the Revenue Act of 1942, and are, therefore, excluded from the term “capital assets” as defined therein. However, if such leasehold interests were held for more than six months, they qualify as “property used in the trade or business,” as defined in section 117 (j) of the Code, as added by section 151 (b) of the Revenue Act of 1942, and are subject to the treatment provided for in that section. Petitioners’ leases which they were using in the operation of their business had been held for more than 6 months. Therefore it is clear that they qualify as “property used in the trade or business” as defined in section 117 (j) of the Code. The $59,211.11 which petitioners received in compromise of their judgment against Skinner & Eddy was of course not received from the sale or exchange of any of their oil or gas in place. If it had been, the resulting gain would have been taxable as capital gain. See Anderson v. Commissioner, 81 F. 2d 457. Petitioners did not sell anything to or exchange anything with Skinner & Eddy. They do not contend that they did, but they do contend that the amount which they received in compromise of their judgment was received as compensation for the destruction in part of oil in place underneath their leases and therefore represented a compulsory or involuntary conversion of property within the meaning of section 117 (j) (2) of the Code. Respondent’s main contention is that petitioners’ judgment against Skinner & Eddy was for loss of profits and that money received to compensate for loss of profits represents ordinary income and not capital gain. Respondent cites such cases as Glenshaw Glass Co 18 T. C. 860, affd. 211 F. 2d 928, in support of his contention. Respondent’s position would be correct if the record sustained his contention that petitioners’ judgment against Skinner & Eddy was for restoration of profits. But in our view the record does not sustain respondent’s contention. The issue which was submitted to the jury was the amount of money which would compensate petitioners for the damages which Skinner & Eddy had inflicted upon their property. The portions of the court’s charge which we have incorporated in our Findings of Fact would seem to show it was that issue which was submitted to the jury and it was upon that issue that the jury’s verdict was based. We therefore conclude that the compromise settlement which was effected by the payment of the money in question was in settlement of the judgment for damages to the oil in place and was not for a restoration of profits. Having reached the conclusions just stated, the question arises: Does the sum of $59,211.11 received by petitioners represent payment for an involuntary conversion of property as a result of the destruction in whole or in part thereof ? The Commissioner contends that it does not. He argues that the oil is still in place, not destroyed either in whole or in part; that petitioners still have the lessee’s right to enter into the leases and to continue drilling for such oil. That, of course, is true but the jury under the charge of the court has in effect found that certain portions of petitioners’ oil have been rendered immobile by the negligent acts of Skinner & Eddy and cannot be extracted. It was for that damage the judgment was awarded. One of the meanings of the word “destroy,” according to Funk & Wagnalls New Standard Dictionary, is: “To take away completely the value or usefulness of.” Another is: “To render of no avail.” In State v. Johnson, 19 S. C. 497, 14 S. E. 2d 24, the court said: Included in appellant’s brief is a definition of the word destroy in 18 C. J. 975 from which the following is quoted: “While the term ordinarily implies complete or total destruction, it has on more than one occasion been construed to describe an act which while rendering the thing useless for the purpose for which it was intended, did not literally demolish or annihilate it.” We oonclude that the $59,211.11 was received by petitioners to compensate them for the destruction in part of their property, to wit, oil in place which was rendered immobile by Skinner & Eddy’s negligent acts. The statute itself includes the “compulsory or involuntary conversion (as a result of destruction in whole or in part * * *) of property used in the trade or business * * We conclude that petitioners’ case comes within the purview of the statute relied on, section 117 (j). Cf. Guy L. Waggoner, 15 T. C. 496. It is stipulated that the property had been held by petitioners for more than 6 months prior to the receipt of the payment of damages. Therefore the amount received is taxable as capital gain. Because there are some uncontested adjustments, Decisions will be entered, under Rule 50 SEC. 117. CAPITAL GAINS AND LOSSES. (j) Gains and Losses From Involuntary Conversion and From the Sale or Exchange or Certain Property used in the Trade or Business.— (1) Definition of property used in the trade or business. — For the purposes of this subsection, the term “property used in the trade or business” means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. * * * (2) General rule. — If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, andi conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * *