HAROLD AND SANDRA DANCER, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5180–77.    Filed March 13, 1980.

*John A. Lynch, Jr.,* for the petitioners.
*Steven I. Klein,* for the respondent.

NIMS, *Judge:* Respondent determined a deficiency in income tax for the year 1974 in the amount of $15,998.80.

The only issue for our determination is whether $40,000 paid

---

by Harold Dancer in 1974 in settlement of a civil action brought about as a consequence of an automobile accident is deductible in that year as an ordinary and necessary business expense under section 162(a).[1] Respondent determined that the expenses were nondeductible personal expenses and he disallowed the deduction on that basis.

## FINDINGS OF FACT

Some of the facts were stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference.

Harold Dancer (sometimes referred to as the petitioner) and Sandra Dancer were husband and wife residing in Freehold, N.J., at the time the petition was filed in this case.

During September 1971, petitioner was in the business of training and driving harness horses. There were several phases to his operation. Petitioner trained horses at his uncle's farm in New Egypt, N.J.; he drove horses, usually at nearby Freehold Raceway; and he handled administrative matters out of an office maintained in the basement of his home located on his Freehold farm. Petitioner also kept horses which had been "turned out," i.e., horses that were resting or recuperating, at his Freehold farm. Petitioner's home in Freehold was about 17 miles east of the training track in New Egypt, and the Freehold Raceway was about 3½ miles east of petitioner's home. During September 1971, it took petitioner about one-half hour to drive between the training track in New Egypt and his home in Freehold.

Petitioner's custom was to go to the New Egypt farm in the morning and train horses. He would return home at approximately noontime and before he reached his house he would check on the horses and stalls located there. Once inside his house, he would attend to office matters. Since he usually returned home around lunchtime, he typically ate lunch at home. Later, during the afternoon, petitioner would often proceed to the Freehold Raceway where he raced horses. The routine would vary if petitioner was to race at Freehold in the early afternoon. On those days, he would proceed to Freehold Raceway directly from

---

[1]All statutory references are to the Internal Revenue Code of 1954, as in effect during the years at issue, except as otherwise expressly indicated.

the New Egypt farm and tend to the horses and administrative matters when he returned home later in the day.

In September 1971, petitioner employed at his farm a bookkeeper/secretary and at least one employee to take care of the horses located there. His wife also worked in the business although she received no compensation. At the New Egypt training track, he employed a blacksmith, grooms, and several stable hands.

On the morning of September 3, 1971, petitioner went to the New Egypt farm to train the horses entrusted to his tutelage. Late that morning, petitioner left the New Egypt farm intending to drive home to his Freehold farm and tend to the horses located on his farm as well as administrative matters in his home office. Petitioner also planned to drive a trotter in a late afternoon race at the Freehold Raceway. Enroute to his home, at approximately 11:45 a.m., the automobile that he owned and was driving collided with one Jeffrey M. Moriarity who was riding a bicycle at the time. The child was severely injured. Despite the accident, petitioner carried through with his plans and drove a horse in a late afternoon race at the Freehold Raceway.

Suit was brought by, and on behalf of, Jeffrey M. Moriarity against petitioner. The case was settled during 1974 for $140,000. Petitioner's automobile liability insurance covered $100,000 of this amount, and petitioner paid the $40,000 balance during 1974.

On their 1974 Federal income tax return, petitioners claimed the payment of $40,000 towards the settlement of the civil action as a deduction on Schedule C of their income tax return. Respondent, in his statutory notice of deficiency, disallowed in full the claimed deduction of $40,000.

## OPINION

The principal issue is whether petitioner is entitled to deduct as an ordinary and necessary business expense under section 162(a) the $40,000 he paid in settlement of a personal injury lawsuit.

The parties have framed the issue strictly as a factual matter. They both apparently agree that the $40,000 expenditure is deductible as an ordinary and necessary business expense if the petitioner was "on business" as he traveled to his home. Petitioner claims he was "on business" because he was traveling from his horse training facilities to his principal office located in

his home where he intended to conduct business. Respondent contends that petitioner's trip between the New Egypt farm and his home was a personal trip because petitioner had no intention of conducting business when he reached home.

Implicit in this presentation of the case is a legal issue that needs to be addressed. Even assuming that the facts are found as alleged by petitioner, there is a question as to whether expenses of this nature are, as a matter of law, too attenuated from the conduct of the trade or business to qualify as deductible expenses.

As a preliminary matter, we observe that the expenditure in this case is, in some respects, akin to a transportation cost, although it is certainly not a direct cost of transporting an individual in any traditional sense. Since petitioner was traveling from a place of business to his home which constituted a principal office, the transportation costs of that trip are deductible. *Curphey v. Commissioner*, 73 T.C. 766 (1980).[2] However, in cases like this, where the cost is an adjunct of and not a direct cost of transporting an individual, we have not felt obliged to routinely allow the expenditure as a transportation cost deduction. See, for example, *Murphy v. Commissioner*, 48 T.C. 569 (1967). The starting point for our analysis in such cases has been section 162. *Freedman v. Commissioner*, 35 T.C. 1179 (1961), affd. 301 F.2d 359 (5th Cir. 1962), discussed *infra*.

We have found as a fact that the accident occurred at a time when petitioner was on his way from the New Egypt farm, where he trained horses, to conduct business at his home, rather than merely on his way to lunch as contended by respondent, but we do so with reluctance. Petitioner sought to establish that his trip on September 3, 1971, from the New Egypt farm to his home was a business trip through his testimony that it was his custom, on returning home from the New Egypt farm, first to spend 15 to 30 minutes and perhaps longer checking the horses, fences, and equipment in the paddock area, and second, to proceed to the house, consult with his secretary/bookkeeper, and handle administrative matters, all of which were conducted out

---

[2] It is significant in this regard that petitioner's home office was not simply a place where he voluntarily chose to do work as a matter of personal preference or convenience but rather was a principal place of business. In *Green v. Commissioner*, 59 T.C. 456 (1972), we held that a personal residence must be at least a "principal office" for the expense to avoid the nondeductible commuting expense characterization. See *Curphey v. Commissioner*, 73 T.C. 766 (1980).

of his house. On occasion, petitioner testified, he would eat lunch as he was working.

This testimony on its face appears to conflict to some extent with petitioner's explanation for his return trip on that day in answers to written interrogatories propounded in connection with the civil negligence action. The interrogatories asked petitioner to detail the scope of his employment activities on the day of the accident and indicate precisely what he was doing at the time of the accident. Petitioner answered: "Had trained horses in the morning and drove at Freehold in the afternoon." He also indicated that he was going home to lunch at the time of the accident. At an oral deposition held on July 5, 1972, petitioner confirmed that at the time of the accident, he was going home for lunch.

Respondent asserts that the Court should base its factual determination on the fairly contemporaneous interrogatories rather than petitioner's vague testimony regarding his mode of operation at trial some 8 years after the accident. We cannot deny that such an approach is appealing. Nevertheless, we think petitioner's testimony in the State court matter can be reconciled with his testimony before us. Petitioner testified that he was instructed by an insurance company lawyer to give a flat answer to the effect that he (petitioner) was going home to lunch so as to avoid getting his uncle involved in the lawsuit. In any event, we cannot overlook other probative evidence in this case.

In the above regard, petitioner does not stand alone in asserting that he was traveling to his home for reasons other than the purely personal reason of eating lunch. Sandra Dancer, petitioner's wife, who was a participant in although not an employee of the business, testified that all facets of the business, except for actual training, occurred at Freehold. Both she and Mrs. Jessie Ault, the secretary/bookkeeper, testified that petitioner would return from the New Egypt farm around lunchtime, check the horses that were stabled at the Freehold farm, and then take care of administrative matters. In the final analysis, and despite the doubts that petitioner's inconsistent statements cast on his credibility, we find that petitioner's home served as his principal office and that petitioner was on his way home to conduct business.

Our determination that the Freehold farm was a place of

business and that petitioner was driving to the Freehold farm to conduct business does not end the analysis, however. Petitioner must still show that the expenditure constituted an ordinary and necessary expense paid or incurred in carrying on a trade or business.

In *Kornhauser v. United States*, 276 U.S. 145, 153 (1928), the Supreme Court, in discussing various rulings by the Commissioner allowing the deduction of legal expenses in defending different types of lawsuits, said:

> The basis of these holdings seems to be that where a suit or action is directly connected with, or, as otherwise stated (*Appeal of Backer*, 1 B.T.A. 214, 216), proximately resulted from, his business, the expense incurred is a business expense within the meaning of § 214(a), subd. (1), of the * * * [Revenue Act of 1918, Pub. L. 254, 65th Cong., 3d Sess., 40 Stat. 1057.]

Thus, the Supreme Court determined that expenses must be directly connected with, or proximately resulting from, the trade or business, if they are to be deductible.

The principles espoused in *Kornhauser* relating to damages were applied in *Anderson v. Commissioner*, 81 F.2d 457 (10th Cir. 1936), revg. 30 B.T.A. 597 (1934), where the Circuit Court permitted the taxpayer to deduct as a business expense damages arising out of a collision caused by the taxpayer's negligent driving. In that case, the taxpayer was a farmer who also owned and managed several rental buildings. While driving a distance of over 100 miles from his home to procure a workman to repair one of the buildings, he collided with another car, thereby killing the driver. The judgment for damages and expenses was held deductible on the ground that the accident was directly connected with the taxpayer's business.

We find that the expenditures involved in the instant case were similarly directly connected with and proximately resulted from petitioner's business. Petitioner's business activities consisted of training and racing horses. Just as business exigencies dictated that petitioner make use of facilities located in at least three different sites—his home, the New Egypt farm, and the Freehold Raceway—business exigencies mandated the trip between the sites. The trip was necessitated by the scope of the business activity that produced petitioner's income.

It is true that the expenditure in the instant case did not further petitioner's business in any economic sense; nor is it, we hope, the type of expenditure that many businesses are called

upon to pay. Nevertheless, neither factor lessens the direct relationship between the expenditure and the business. Automobile travel by petitioner was an integral part of this business. As rising insurance rates suggest, the cost of fuel and routine servicing are not the only costs one can expect in operating a car. As unfortunate as it may be, lapses by drivers seem to be an inseparable incident of driving a car. *Anderson v. Commissioner, supra.* Costs incurred as a result of such an incident are just as much a part of overall business expenses as the cost of fuel.

Respondent argues that this Court's decision in *Freedman v. Commissioner,* 35 T.C. 1179 (1961), affd. 301 F.2d 359 (5th Cir. 1962), mandates a different result. While the distinction between *Freedman* and this case is subtle, it is nonetheless profound. In *Freedman,* this Court refused to allow the taxpayer to deduct expenditures for legal fees and damages incurred in connection with an accident in which the taxpayer struck and severely injured a pedestrian. At the time of the accident, the taxpayer was traveling between a business where he was employed as a manager and a completely unrelated liquor store business in which he owned a 50-percent interest. In holding that the expenditures were not directly connected with, or proximately resulting from, the taxpayer's business, and thus were too remote from the taxpayer's business activity to be considered ordinary and necessary business expenses, the Court observed that the taxpayer's—

transportation between these two places of business may have been necessary in his business of earning an income from two sources, but the accident was merely incidental to that transportation and had nothing to do with either business activity which produced his income. The expenses resulting from this accident at this time and place would not be deductible by petitioner as an expense of either of the separate business activities. [35 T.C. at 1183.]

*Freedman* is distinguishable because the taxpayer in that case was traveling between two separate businesses, whereas, petitioner in the instant case was traveling between two locations of the same business. Although the Commissioner's administrative position has it that transportation costs incurred when traveling from one business location to another are deductible even if the travel is occasioned by the taxpayer's employment in two

separate and unrelated jobs,[3] there is a personal element to such transportation. It cannot be said that such a taxpayer is "on business" as he or she commutes to a second job or that the expense is directly connected with, or proximately related to, either business. By contrast, in a case like the instant case where the petitioner is traveling between two locations of the same business, there is not that personal element to the travel. It is strictly business exigencies that mandate the trip.

Respondent's reliance on *Henke v. Jarecki*, an unreported case (N.D. Ill. 1956, 51 AFTR 56–1159, 56–1 USTC par. 9511), is also misplaced. The taxpayer in that case contended that damages resulting from an automobile accident were deductible because at the time of the accident he was proceeding home from work to change his shirt and pack his suitcase for a business trip to Dayton, Ohio. The Court rejected the taxpayer's argument on a factual basis, finding that the taxpayer was returning home more for personal than for business reasons.

Needless to say, if petitioner had completed work for the day because he had no business to attend to at home and had no commitment to race at Freehold later in the day, the expenditure would not have been deductible because the trip home would have been purely personal.

Due to concessions by petitioner on another issue,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

WILBUR, *J.*, concurring: I concur in the majority opinion for the reasons expressed herein. The expenses of an automobile accident, whether attributable to damage to the car being driven or to physical harm inflicted on another person, are ordinary and necessary expenses of conducting a trade or business. It is certainly necessary to pay these expenses if one is to continue in business. And given the vicissitudes of travel by automobile, it is not extraordinary to have an accident. If an employee were involved in an accident under similar circumstances, the accident

---

[3]Rev. Rul. 55–109, 1955–1 C.B. 261.

would be in the course of his employer's trade or business, and the employer would be liable under the principles of respondeat superior. While the language of section 162 may vary from the standard governing an agency relationship, the everyday facts of life upon which this transaction is predicated are not sufficiently disparate to produce a different result.

Given the findings of fact in the majority opinion, it is clear that the petitioner was traveling on business when the accident occurred and that this is the critical finding in allowing the deduction. Since he was traveling on business, petitioner would be allowed to depreciate his car, and if he had a blowout, the expenses of repairing his tire would be deductible. If the blowout caused him to hit a tree and damage his fender, the repairs would either be deductible, or the cost of repair would be depreciable over the remaining life of the car. Additionally, if the car was totaled, he would be entitled to write off his remaining basis in the car, and any new car acquired would be again subject to depreciation.[1] While here, petitioner injured a child, the nature of the accident should not determine deductibility; rather (as the majority clearly holds), the definitive question is whether the accident occurred while petitioner was driving his car in his business. An accident may have varying consequences, but if it occurs on a business trip, the expenses of the accident are deductible.

It is clear that insurance premiums to cover the loss of an accident—either collision insurance for damages to a vehicle or liability insurance covering injuries to third parties or their property—would be deductible to the extent that the car is used in a trade or business. Whether the costs of an accident are covered on a regular basis through insurance premiums, or the individual taxpayer is a self-insurer, should make no difference in this principle. Many policies have a deductible feature requiring the insured to pay the first $250 or $500 of the damages resulting from an accident. It makes no sense to allow a deduction for the premiums paid to cover the losses arising from an accident while disallowing the out-of-pocket costs paid to meet the deductible when an accident occurs.

For this reason, the majority's attempt to distinguish rather

---

[1]Assuming the vehicle was used partly for business reasons and partly for personal reasons, an allocation of these expenses would have to be made, but this does not change the principle.

than overrule *Freedman v. Commissioner,* 35 T.C. 1179 (1961), affd. 301 F.2d 359 (5th Cir. 1962), is subtle and attenuated. The majority in the instant case emphasized that petitioner was traveling from a place of business to his home which was also his principal office and that "transportation costs of that trip are deductible," citing *Curphey v. Commissioner,* 73 T.C. 766 (1980). In *Freedman,* the accident occurred when the petitioner was traveling directly from one business to another. We stated:

Petitioner's transportation between these two places of business may have been necessary in his business of earning an income from two sources, but the accident was merely incidental to that transportation and had nothing to do with either business activity which produced his income. * * * [35 T.C. at 1183.]

In *Freedman* and in the case before us, the transportation costs were deductible because petitioner was, in making the trip, pursuing his business. Automobile accidents are part of the grist of modern life, a not atypical phenomena of traveling on business—and this is clearly the basis of the majority's holding that the expenses before us are deductible. Since in both *Freedman* and this case, the petitioner was traveling on business, and the majority now holds that the expenses of the business trip (including an accident) are deductible, the cases are completely indistinguishable. I would therefore overrule *Freedman* in order to avoid the confusion that practitioners too often face when confronted with a series of cases involving metaphysical distinctions designed to preserve the illusion of continuity. As Mr. Justice Cardozo reminded us, we have an obligation to "gather up the driftwood and leave the waters pure." See *Hicks v. Commissioner,* 47 T.C. 71, 74 (1966).

Pure water is not the only benefit of frankly stating what we are doing; for the Service may use the driftwood to dispose of other cases, most of them involving taxpayers without counsel at the administrative level. A taxpayer with a case on all fours with the case we decide today, except he is traveling between two businesses, will surely be told by the Service that *Freedman* governs his case and that he loses. In many instances, the taxpayer will concede; even if he doesn't, he may well have to litigate, and in order to overrule *Freedman,* the issue will once again be before the Court Conference. This is both unfair and expensive to the taxpayer and is very poor use of scarce judicial

resources. For these reasons, I believe we should overrule *Freedman.*

FAY, DAWSON, TANNENWALD, STERRETT, HALL, and WILES, *JJ.*, agree with this concurring opinion.