SAM GILLIAM, JR. and DOROTHY B. GILLIAM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gilliam v. Commissioner
Docket No. 4986-79.
United States Tax Court
T.C. Memo 1986-81; 1986 Tax Ct. Memo LEXIS 525; 51 T.C.M. (CCH) 515; T.C.M. (RIA) 86081; March 3, 1986. *525 Petitioner-husband was travelling by airplane on a business trip, when suddenly he began to act in a bizarre and irrational manner; he also threatened two members of the flight crew and assaulted a passenger. After the airplane landed, petitioner-husband was arrested. Two weeks later, he was indicted. At trial, the court rendered an acquittal verdict by reason of temporary insanity. Petitioners paid $16,850 for legal fees in the criminal case and paid $3,800 to the assaulted passenger in settlement of a related civil claim. Held: The expenses are not "ordinary"; the amounts paid are not deductible under sec. 162, I.R.C. 1954. Dancer v. Commissioner,73 T.C. 1103 (1980), and Clark v. Commissioner,30 T.C. 1330 (1958), are distinguishable. David Povich, for the petitioners. Lewis R. Carluzzo, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income taxes against petitioners for 1975 and 1976 in the amounts of $4,529 and $3,159, respectively. [1] After concessions by petitioners, the issue for decision [2] is whether petitioners are entitled to deduct under section 162 the amounts paid in defense *526 of a criminal prosecution and in settlement of a related civil claim. FINDINGS OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioners Sam Gilliam Jr. (hereinafter sometimes referred to as "Gilliam"), and Dorothy B. Gilliam, husband and wife, resided in Washington, D.C. Gilliam was born in Tupelo, Mississippi, in 1933, and raised in Louisville, Kentucky. In 1961, he received a master of arts degree in painting from the University of Louisville. Gilliam is, and was at all material periods, a noted artist. His works have been exhibited in numerous art galleries throughout the United States and Europe, including *527 the Corcoran Gallery of Art, Washington, D.C.; the Philadelphia Museum of Art, Philadelphia, Pennsylvania; the Karl Solway Gallery, Cincinnati, Ohio; the Phoenix Gallery, San Francisco, California; and the University of California, Irvine, California. His works have also been exhibited and sold at the Fendrick Gallery, Washington, D.C. In addition, Gilliam is, and was at all material periods, a teacher of art. On occasion, Gilliam lectured and taught art at various institutions. Gilliam accepted an invitation to lecture and teach for a week at the Memphis Academy of Arts in Memphis, Tennessee. On Sunday, February 23, 1975, he flew to Memphis to fulfill this business obligation. Gilliam had a history of hospitalizations for mental and emotional disturbances and continued to be under psychiatric care until the time of his trip to Memphis. In December 1963, Gilliam was hospitalized in Louisville; Gilliam had anxieties about his work as an artist. For periods of time in both 1965 and 1966, Gilliam suffered from depression and was unable to work. In 1970, Gilliam was again hospitalized. In 1973, while Gilliam was a visiting artist at a number of university campuses in California, *528 he found it necessary to consult an airport physician; however, when he returned to Washington, D.C., Gilliam did not require hospitalization. Before his Memphis trip, Gilliam created a 225-foot painting for the Thirty-fourth Biennial Exhibition of American Painting at the Corcoran Gallery of Art (hereinafter sometimes referred to as "the Exhibition"). The Exhibition opened on Friday evening, February 21, 1975. In addition, Gilliam was in the process of preparing a giant mural for an outside wall of the Philadelphia Museum of Art for the 1975 Spring Festival in Philadelphia. The budget plans for this mural were due on Monday, February 24, 1975. On the night before his Memphis trip, Gilliam felt anxious and unable to rest. On Sunday morning, Gilliam contacted Ranville Clark (hereinafter sometimes referred to as "Clark"), a doctor Gilliam had been consulting intermittently over the years, and asked Clark to prescribe some medication to relieve his anxiety. Clark arranged for Gilliam to pick up a prescription of the drug Dalmane on the way to the airport. Gilliam had taken medication frequently during the preceding 10 years. Clark had never before prescribed Dalmane for Gilliam. *529 On Sunday, February 23, 1975, Gilliam got the prescription and at about 3:25 p.m., he boarded American Airlines flight 395 at Washington National Airport, Washington, D.C., bound for Memphis. Gilliam occupied a window seat. He took the Dalmane for the first time shortly after boarding the airplane. About one and one-half hours after the airplane departed Washington National Airport, Gilliam began to act in an irrational manner. He talked of bizarre events and had difficulty in speaking. According to some witnesses, he appeared to be airsick and held his head. Gilliam began to feel trapped, anxious, disoriented, and very agitated. Gilliam said that the plane was going to crash and that he wanted a life raft. Gilliam entered the aisle and, while going from one end of the airplane to the other, he tried to exit from three different doors. Then Gilliam struck Seiji Nakamura (hereinafter sometimes referred to as "Nakamura"), another passenger, several times with a telephone receiver. Nakamura was seated toward the rear of the airplane, near one of the exits. Gilliam also threatened the navigator and a stewardess, called for help, and cried. As a result of the attack, Nakamura *530 sustained a one-inch laceration above his left eyebrow which required four sutures. Nakamura also suffered ecchymosis of the left arm and pains in his left wrist. Nakamura was treated for these injuries at Methodist Hospital in Memphis. On arriving in Memphis, Gilliam was arrested by Federal officials. On March 10, 1975, Gilliam was indicted. He was brought to trial in the United States District Court for the Western District of Tennessee, Western Division, on one count of violation of 49 U.S.C. § 1472(k) (relating to certain crimes aboard in aircraft in flight) and two counts of violation 49 U.S.C. § 1472(j) (relating to interference with flight crew members or flight attendants). Gilliam entered a plea of not guilty to the criminal charges. The trial began on September 8, 1975, and ended on September 10, 1975. After Gilliam presented all of his evidence, the district court granted Gilliam's motion for a judgment of acquittal by reason of temporary insanity. Petitioners paid $8,250 and $8,600 for legal fees in 1975 and 1976, respectively, in connection with both the criminal trial and Nakamura's civil claim. In 1975, petitioners also paid $3,800 to Nakamura in settlement of *531 the civil claim. Petitioners claimed deductions for the amounts paid in 1975 and 1976 on the appropriate individual income tax returns. Respondent disallowed the amounts claimed in both years attributable to the incident on the airplane. [3] * * * Gilliam's trip to Memphis was a trip in furtherance of his trades or businesses. Petitioners' expenses for the legal fees and claim settlement described, supra, are not ordinary expenses of Gilliam's *532 trades or businesses. OPINION Petitioners contend that they are entitled to deduct the amounts paid in defense of the criminal prosecution and in settlement of the related civil claim under section 162. [4] Petitioners maintain that the instant case is directly controlled by our decision in Dancer v. Commissioner,73 T.C. 1103 (1980). According to petitioners, "[t]he clear holding of Dancer is * * * that expenses for litigation arising out of an accident which occurs during a business trip are deductible as ordinary and necessary business expenses." Petitioners also contend that Clark v. Commissioner,30 T.C. 1330 (1958), is to the same effect as Dancer. Respondent maintains that Dancer and Clark are distinguishable. Respondent contends *533 that the legal fees paid are not deductible under either section 162 or section 212 because the criminal charges against Gilliam were neither directly connected with nor proximately resulted from his trade or business and the legal fees were not paid for the production of income. Respondent maintains that "the criminal charges which arose as a result of * * * [the incident on the airplane], could hardly be deemed 'ordinary,' given the nature of [Gilliam's] profession." Respondent contends "that the provisions of section 262 control this situation." As to the settlement of the related civil claim, respondent asserts that since Gilliam committed an intentional tort, the settlement of the civil claim constitutes a nondeductible personal expense. We agree with respondent that the expenses are not ordinary expenses of Gilliam's trade or business. Section 162(a)[5] allows a deduction for all the ordinary and necessary expenses of carrying on a trade or business. In order for the expense to be deductible by a taxpayer, it must be an ordinary expense, it must be a necessary expense, and it must be an expense of carrying on the taxpayer's trade or business. If any one of these requirements *534 is not met, the expense is not deductible under section 162(a). Deputy v. du Pont,308 U.S. 488 (1940); Welch v. Helvering,290 U.S. 111 (1933); Kornhauser v. United States,276 U.S. 145 (1928). In Deputy v. du Pont, the Supreme Court set forth a guide for application of the statutory requirement that the expense be "ordinary", as follows (308 U.S. at 494-497): In the second place, these payments were not "ordinary" ones for the conduct of the kind of business in which, we assume arguendo, respondent was engaged. The District Court held that they were "beyond the norm of general and accepted business practice" and were in fact "so extraordinary as to occur in the lives of ordinary business men not at all" and in the life of the respondent "but once." [n8] Certainly there are no norms of conduct to which we have been referred or of which we are cognizant which would bring these payments within the meaning of ordinary expenses for conserving and enhancing an estate. We do not doubt the correctness of the District Court's finding that respondent embarked on this program to the end that his beneficial stock ownership in the du Pont Company might be conserved and enhanced. But that *535 does not make the cost to him an "ordinary" expense within the meaning of the Act. Ordinary has the connotation of normal, usual, or customary. To be sure, an expense may be ordinary though it happen but once in the taxpayer's lifetime. Cf. Kornhauser v. United States,supra.Yet the transaction which gives rise to it must be of common or frequent occurrence in the type of business involved. Welch v. Helvering,supra, 114. Hence, the fact that a particular expense would be an ordinary or common one in the course of one business and so deductible under § 23(a) does not necessarily make it such in connection with another business. * * * As stated in Welch v. Helvering,supra, pp. 113-114: ". . . What is ordinary, though there must always be a strain of constancy within it, is none the less a variable affected by time and place and circumstance." One of the extremely relevant circumstances is the nature and scope of the particular business out of which the expense in question accrued. The fact that an obligation to pay has arisen is not sufficient. It is the kind of transaction out of which the obligation arose and its normalcy in the particular business which are crucial and *536 controlling. [n8] 22 F.Supp. 589, 597.
Review of the many decided cases is of little aid since each turns on its special facts. But the principle is clear. And on application of that principle to these facts, it seems evident that the payments in question cannot be placed in the category of those items of expense which a conservator of an estate, a custodian of a portfolio, a supervisor of a group of investments, a manager of wide financial and business interests, or a substantial stockholder in a corporation engaged in conserving and enhancing his estate would ordinarily incur. We cannot assume that they are embraced within the normal overhead or operating costs of such activities. There is no evidence that stockholders or investors, in furtherance of enhancing and conserving their estates, ordinarily or frequently lend such assistance to employee stock purchase plans of their corporations. An in absence of such evidence there is no basis for an assumption, in experience or common knowledge, that these payments are to be placed in the same category as typically ordinary expenses of such activities, e.g., rental of safe deposit boxes, cost of investment counsel or of investment *537 services, salaries of secretaries and the like. Rather these payments seem to us to represent most extraordinary expenses for that type of activity. Therefore, the claim for deduction falls, as did the claim of an officer of a corporation who paid its debts to strengthen his own standing and credit. Welch v. Helvering,supra.And the fact that the payments might have been necessary in the sense that consummation of the transaction with the Delaware Company was beneficial to respondent's estate is of no aid. For Congress has not decreed that all necessary expenses may be deducted. Though plainly necessary they cannot be allowed unless they are also ordinary. Welch v. Helvering,supra.
Petitioners bear the burden of proving entitlement to a deduction under section 162. Welch v. Helvering,290 U.S. at 115; Rule 142(a), Tax Court Rules of Practice & Procedure. Gilliam is a noted artist and teacher of art. It undoubtedly *538 is ordinary for people in Gilliam's trades or businesses to travel (and to travel by air) in the course of such trades or businesses; however, we do not believe it is ordinary for people in such trades or businesses to be involved in altercations of the sort here involved in the course of any such travel. The travel was not itself the conduct of Gilliam's trades or businesses. Also, the expenses here involved are not strictly a cost of Gilliam's transportation. Finally, it is obvious that neither the altercation nor the expenses were undertaken to further Gilliam's trades or businesses. We conclude that Gilliam's expenses are not ordinary expenses of his trades or businesses. It is instructive to compare the instant case with Dancer v. Commissioner,supra, upon which petitioners rely. In both cases, the taxpayer was travelling on business. In both cases, the expenses in dispute were not the cost of the travelling, but rather were the cost of an untoward incident that occurred in the course of the trip. In both cases, the incident did not facilitate the trip or otherwise assist the taxpayer's trade or business. In both cases, the taxpayer was responsible for the incident; in neither *539 case was the taxpayer willful. In Dancer, the taxpayer was driving an automobile; he caused an accident which resulted in injuries to a child. The relevant expenses were the taxpayer's payments to settle the civil claims arising from the accident. 73 T.C. at 1105. In the instant case, Gilliam was a passenger in an airplane; he apparently committed acts which would have been criminal but for his temporary insanity, and he injured a fellow passenger. Gilliam's expenses were the costs of his successful legal defense, and his payments to settle Nakamura's civil claim. In Dancer, we stated as follows (73 T.C. at 1108-1109): It is true that the expenditure in the instant case did not further petitioner's business in any economic sense; nor is it, we hope, the type of expenditure that many businesses are called upon to pay. Nevertheless, neither factor lessens the direct relationship between the expenditure and the business. Automobile travel by petitioner was an integral part of this business. As rising insurance rates suggest, the cost of fuel and routine servicing are not the only costs one can expect in operating a car.As unfortunate as it may be, lapses by drivers seem to be an *540 inseparable incident of driving a car.Anderson v. Commissioner [81 F.2d 457 (CA10 1936)]. Costs incurred as a result of such an incident are just as much a part of overall business expenses as the cost of fuel. [Emphasis supplied.] Dancer is distinguishable. In Clark v. Commissioner,supra, also relied on by petitioners, the expenses consisted of payments of (a) legal fees in defense of a criminal prosecution and (b) amounts to settle a related civil claim. In this regard, the instant case is similar to Clark. In Clark, however, the taxpayer's activities that gave rise to the prosecution and civil claim were activities directly in the conduct of Clark's trade or business. In the instant case, Gilliam's activities were not directly in the conduct of his trades or businesses. Rather, the activities merely occurred in the course of transportation connected with Gilliam's trades or businesses. And, as we noted in Dancer v. Commissioner,73 T.C. at 1106, "in cases like this, where the cost is an adjunct of and not a direct cost of transporting an individual, we have not felt obliged to routinely allow the expenditure as a transportation cost deduction." Petitioners also rely on Commissioner v. Tellier,383 U.S. 687 (1966), *541 in which the taxpayer was allowed to deduct the cost of an unsuccessful criminal defense to securities fraud charges. The activities that gave rise to the criminal prosecution in Tellier were activities directly in the conduct of Tellier's trade or business. Our analysis of the effect of Clark v. Commissioner, applies equally to the effect of Commissioner v. Tellier.
In sum, Gilliam's expenses were of a kind similar to those of the taxpayers in Tellier and Clark; however the activities giving rise to Gilliam's expenses were not activities directly in the conduct of his trades or businesses, while Tellier's and Clark's activities were directly in the conduct of their respective trades or businesses. Gilliam's expenses were related to his trades or businesses in a manner similar to those of the taxpayer in Dancer; however Gilliam's actions giving rise to the expenses were not shown to be ordinary, while Dancer's were shown to be ordinary. Tellier,Clark, and Dancer all have similarities to the instant case; however, Tellier,Clark, and Dancer are distinguishable in important respects. The expenses are not deductible under section 162(a). [6]
We *542 hold for respondent. Decision will be entered for respondent.
Footnotes
1. Of these amounts, self-employment taxes under chapter 2 are $200 for 1975 and $611 for 1976; the remaining amounts are chapter 1 income tax. Unless indicated otherwise, all section and chapter references are to sections and chapters of the Internal Revenue Code of 1954 as in effect for the years in issue. ↩
2. The self-employment tax adjustments and medical expense adjustments are derivative and depend on the resolution of the issue for decision.↩
3. Although in both years respondent disallowed petitioners' expenditures arising out of the incident on the airplane and allowed the remainder of the claimed legal and professional fees deduction, the record fails to indicate why for 1976 respondent disallowed an additional $1,000 over the amount petitioners paid for Gilliam's legal representation. Since petitioners dispute only the disallowed deductions which relate to the incident on the airplane and both sides agree that petitioners paid $8,600 for legal fees in 1976, we deem petitioners to have conceded the additional $1,000 claimed as a legal and professional fees deduction for 1976. Jarvis v. Commissioner,78 T.C. 646, 658 n. 19 (1982); Rule 34(b)(4), Tax Court Rules of Practice & Procedure.↩
4. At trial, petitioners asserted that the amounts paid were deductible under section 162 and section 212. On brief, petitioners do not address the deductibility of the amounts paid under section 212. Whether this constitutes a concession by petitioners is unclear; however, it does not affect the analysis herein, since the same criteria apply to the deduction of expenses under section 162 and section 212. Rodney v. Commissioner,53 T.C. 287, 320↩ (1969).
5. Section 162(a) provides in relevant part as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * ↩
6. As to section 212, see n. 4, supra.↩