T.C. Memo. 1997-105


UNITED STATES TAX COURT


RAYMOND STRONG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 27340-90.                    Filed March 3, 1997.


During 1987, petitioner (P) was a business manager at two automobile dealerships.  P claimed various employee business expense deductions, primarily for business meals.

1.  <u>Held</u>:  P is not entitled to deductions for business meals expenses because he has not satisfied the requirements of sec. 274, I.R.C. 1986.

2.  <u>Held</u>, <u>further</u>, deductions are not allowable for P's otherwise deductible other employee business expenses because they do not in the aggregate exceed the 2-percent floor on miscellaneous itemized deductions.  Sec. 67, I.R.C. 1986.

3.  <u>Held</u>, <u>further</u>, P is liable for additions to tax under secs. 6653(a)(1) and 6661(a), I.R.C. 1986.


<u>Stuart E. Abrams</u>, for petitioner.

<u>Mark A. Ericson</u>, <u>Nancy Chassman Rothbaum</u>, and <u>Rosemarie D. Camacho</u>, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

CHABOT, <u>Judge</u>:  Respondent determined deficiencies in Federal individual income tax and additions to tax under sections 6653(a)[1] (negligence, etc.) and 6661 (substantial understatement of liability) against petitioner as follows:

| Year | Deficiency | Additions to Tax | | |
|------|-----------|------------------|------------------|-----------|
| | | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6661 |
| 1987 | $20,272 | $1,014 | [1] | $5,068 |

[1] An amount equal to 50 percent of the interest due on $20,272.

After a deemed concession by petitioner,[2] the issues for decision are as follows:

> (1) Whether petitioner is entitled to various itemized employee business expense deductions;

> (2) Whether petitioner is liable for additions to tax under section 6653(a); and

> (3) Whether petitioner is liable for additions to tax under section 6661(a).

---

[1]   Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1986 as in effect for the year in issue.

[2]   In the notice of deficiency, respondent disallowed petitioner's claimed $250 tax preparation fee deduction.  At the opening statement, this matter remained in dispute.  On the third day of the trial, a witness was questioned about this matter.  However, petitioner, who has the burden of proof, did not argue this matter on brief.  We treat petitioner's failure to argue as, in effect, a concession by petitioner of this matter.  See subpars. (4) and (5) of Rule 151(e); <u>Sundstrand Corp. v. Commissioner</u>, 96 T.C. 226, 344 (1991); <u>Money v. Commissioner</u>, 89 T.C. 46, 48 (1987).

- 3 -

## FINDINGS OF FACT

Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference.

When the petition was filed in the instant case, petitioner resided in Syosset, New York.

### Background

Petitioner has a degree from Baruch College (CUNY) and a Masters in Business Administration degree from Adelphi University.  During 1987, petitioner was employed by Crabtree Toyota, Inc., and Crabtree Hyundai, Inc. (hereinafter sometimes collectively referred to as the Crabtree Dealerships).  The Crabtree Dealerships were located in New Rochelle, Westchester County, New York, and were in the business of selling automobiles.  In 1987, Crabtree also had Mazda, Cadillac, Mitsubishi, Suzuki, and Nissan dealerships in New Rochelle, and a Ford dealership in Larchmont, also in Westchester County.

Petitioner was employed at the Crabtree Dealerships as a business manager, which position was sometimes referred to as a finance and insurance manager.[3]  The Crabtree Dealerships required business managers to be in the showrooms from 50 to 70 hours a week.  Petitioner's duties at the Crabtree Dealerships

---

[3]  The parties stipulated that petitioner was employed by the Crabtree Dealerships as a "salesperson" in 1987.  Our finding, contrary to the stipulation, is in accord with petitioner's trial testimony and with both parties' proposed findings of fact.

were to (1) arrange financing, (2) sell insurance and warranties, (3) assist customers with their automobile registration, and (4) make leasing arrangements. Petitioner's duties as a business manager generally took place after a deal was agreed to for the sale of an automobile. However, at times, petitioner arranged the automobile sale.

Petitioner received $163,289 commission income from the Crabtree Dealerships in 1987. Petitioner's business manager commissions were directly tied to the amount of financing and other arrangements he successfully concluded and were not based on a pool of all business managers at the Crabtree Dealerships. In those instances when petitioner arranged for sales of automobiles, not merely financing, etc., petitioner's commissions were based on the entire sales price. Petitioner sold about 50 automobiles in 1987.

When petitioner referred customers to other Crabtree Dealerships, he earned commissions from the resulting sales. Petitioner's Forms W-2 for 1987, report income only from Crabtree Hyundai, Inc., and Crabtree Toyota, Inc.[4]

---

[4] The record in the instant case does not indicate how the amount of referral commission was determined, or what the mechanics were for petitioner to receive such a commission without a Form W-2's being issued by the dealership at which the referred sale occurred. Respondent appears to agree that the two Forms W-2 include all of petitioner's commission income from the Crabtree Dealerships and the related companies.

The Crabtree Dealerships had a busy year in 1987. Banks competed to obtain the Crabtree Dealerships' financing business in 1987. Petitioner maintained close relationships with representatives of banks and other financial institutions, such as insurance companies and leasing companies, in order to be sure that, once a deal was made between the customer and the dealership, the financing would be approved by a bank or other financial institution.

Crabtree sold the Crabtree Dealerships around mid-1989, and Crabtree no longer had access to the Crabtree Dealerships' books and records.

During 1987, petitioner resided in Syosset, New York, which is located in northeastern Nassau County, on Long Island. The Crabtree Dealerships are about 34 miles from petitioner's residence. Driving between Syosset and New Rochelle ordinarily requires one to pass through Queens and Bronx Counties, and to cross the East River by one of three toll bridges.

## Employee Business Expenses

### Business Meals

Petitioner recorded in a diary the amounts he claims he spent each day for business meals. Each entry in petitioner's diary for meals lists the name of the restaurant, the names of the people present, the type of meal (breakfast, lunch, or dinner), and the cost of the meal. Petitioner's diary does not show the business purpose of any of these meals and does not show

what was the business relationship to petitioner of any of the people present. The business meals shown in the diary include 274 dinners, 104 lunches, and 10 breakfasts. For 1987, petitioner made 388 such entries, showing a total cost of $65,777.39 over 304 days. Petitioner's diary shows entries for every day of 1987 except Sundays, six holidays, and one 3-day vacation.

Petitioner paid for many of his business meals in currency and others of his business meals by credit card. Petitioner's entries in his diary for business meals average about $5,481 a month.

Many of the restaurants listed in the diary, including those shown as lunch sites, are located within a few miles of petitioner's home on Long Island. Some of the listed restaurants are in The Bronx, some in Manhattan, some in Westchester, and some in Connecticut.

Thomas Mercer (hereinafter sometimes referred to as Mercer) hired petitioner to work for the Crabtree Dealerships about 1985 or late 1984. In 1986, Mercer was the general manager of Crabtree Toyota, Inc., Crabtree Mazda, Inc., and Crabtree Hyundai, Inc. In 1986 or 1987, Mercer left those dealerships to become president of an unrelated auto leasing company. According to petitioner's diary, petitioner entertained Mercer once in 1987. In fact, Mercer had dinner with petitioner once or twice during 1987, but he (Mercer) paid for the meals.

Paula Wright (hereinafter sometimes referred to as Wright) was a senior credit analyst at Chemical Bank who dealt with the Crabtree Dealerships, among about 35 auto dealerships, during 1987. At that time, Wright worked in Jericho, which is about 3 miles southwest of Syosset. According to petitioner's diary, petitioner entertained Wright only once during 1987. In fact, Wright had business dinners with petitioner many times during 1987. These dinners, which sometimes involved others from the Crabtree Dealerships and sometimes involved others from Chemical Bank, generally took place at restaurants in or near Syosset or Glen Cove. Glen Cove is about 7 miles northwest of Syosset and Jericho. Petitioner paid for these dinners with Wright.

John Sullivan (hereinafter sometimes referred to as Sullivan) was a retail sales representative with Chemical Bank until around the end of May or beginning of June 1987, at which time he became a credit specialist with Citibank. As a retail sales representative with Chemical Bank, Sullivan had a business relationship with petitioner. As a credit specialist with Citibank, Sullivan did not have a business relationship with petitioner. According to petitioner's diary, petitioner entertained Sullivan seven times in 1987--three times at lunch and four times at dinner. According to petitioner's diary, one lunch and one dinner took place while Sullivan was with Chemical Bank, and two lunches and three dinners took place while Sullivan was with Citibank. In fact, while working for Chemical Bank,

Sullivan went out to lunch weekly or biweekly with petitioner; most of the time Chemical Bank paid for the lunches, sometimes petitioner paid.  After Sullivan left Chemical Bank, the few times he had lunch with petitioner, petitioner paid for the lunch.  Sullivan never had dinner with petitioner.  Sullivan does not know many of the restaurants at which petitioner's diary shows that he ate with petitioner.  Sullivan does not know some of the people petitioner's diary shows as having shared a meal with him and petitioner.

In addition to his diary, petitioner presented the bottom perforated portion of restaurant checks (hereinafter sometimes collectively referred to as the stubs) as substantiation for his meals expenses.  Less than half the stubs have the name of the restaurant imprinted on them.  On most of the stubs there is a name of a restaurant, a month and day but not a year, and an amount, handwritten in pencil.  Petitioner wrote the handwritten information on most, if not all, of the stubs that have handwritten information.

Table 1 shows the information recorded in petitioner's diary about meals at Frank's Steaks in 1987.  All of these meals are shown in the diary as dinners.

Table 1

| Date | Amount | Diners (in addition to petitioner) |
| --- | --- | --- |
| Jan 05 | $132.80 | B. Newman, A. McDermott |
| Feb. 21 | 203.75 | A. Loomis, C. Walsh, N. Hawkins |
| Mar. 14 | 235.50 | C. Shiflet, W. Keller, J. Orr |

| May 08 | 193.50 | L. Lewis, M. Lewis, N. Hannon |
|--------|--------|-------------------------------|
| Jun. 01 | 196.85 | G. Becker, J. Ferraro, D. Voelker |
| Aug. 04 | 212.45 | T. Schwitz, N. Annarella, C. Bouse |
| Aug. 19 | 206.35 | G. Levy, N. Pierce, F. Loria |
| Sep. 30 | 196.00 | J. Gold, M. Hong, J. Niceberg |
| Oct. 09 | 265.00 | B. Ragan, R. Grossman, D. Dearney |
| Oct. 22 | 223.35 | J. Paevor, N. Cohen, J. Cowen |
| Dec. 30 | <u>246.60</u> | M. Smith, J. Fox, M. Hannon |

Total <u>2,312.15</u>

Nine of these 11 dinners at Frank's Steaks in 1987 were "substantiated" by stubs which do not have the name of the restaurant imprinted on them; there are not any stubs for the remaining two dinners.

Frank's Steaks, a restaurant on the border of Westbury and Jericho, opened under that name in July 1988. From January 1987 to July 1988 there was no Frank's Steaks, and there were not any restaurant operations at the Frank's Steaks location. For about a year before that hiatus, the restaurant at this location was named "The Peculiar Penguin". Before that, the restaurant at this location was named "The Great American Cafe". There are no other restaurants in the Westbury or Jericho area named "Frank's" or "Frank's Steaks". There were only two restaurants in the New York City metropolitan area in 1987 with "Frank's" in the name; one was "Frank's" in Manhattan at 14th St. and 9th Ave., and the other was "Frank's Pizzeria" in Huntington, in the northwest corner of Suffolk County, about 6 miles west of Syosset. The stubs that petitioner presented as substantiation of his dinners at Frank's Steaks were not the sort of stubs that had ever been

used at Frank's Steaks or at its predecessor, The Peculiar Penguin.

Petitioner presented two stubs to substantiate two meals at Montauk Yacht Club. Montauk is at the easternmost end of Long Island, more than 80 miles east of Syosset. One stub shows $219.35 for dinner on July 29; the other shows $211 for dinner on September 1. Both stubs are imprinted with the name of the restaurant. Both stubs have the serial no. 05284 imprinted on them. One stub is light paper, with the serial number in red; the other is heavy paper, with the serial number in dark gray. It is evident that the two stubs were parts of separate copies of a single bill, and not stubs for two separate bills almost 5 weeks apart (July 29 and Sept. 1).

Petitioner's diary shows that on Friday, June 26, 1987, he took three people to dinner at Smith & Wollensky, at a cost of $212.75. Petitioner's diary does not show any other meals for that day. Petitioner presented two stubs to substantiate meals on June 26, each in the amount of $212.75. One stub is imprinted with the name of the restaurant, Smith & Wollensky. The other stub does not have any name imprinted on it. The date and amount were hand-written on both stubs. That June 26 dinner is the only meal shown in the entire diary as costing $212.75.

Petitioner's diary shows that on Tuesday, July 7, 1987, he took three people to dinner at Gian-Lorenzo Ristorante, at a cost of $193.50. Petitioner's diary does not show any other meals for

that day.  Petitioner presented two stubs to substantiate meals on July 7, each in the amount of $193.50.  Neither stub has the name of the restaurant imprinted on it.  The stubs are of the same style, but with different serial numbers.  Petitioner's diary shows a $193.50 dinner for January 31 and another one for May 8; there are different stubs to "substantiate" each of these meals.  The diary does not show any other meals costing $193.50.

Petitioner's diary shows that petitioner took people to meals at North Shore Steak House on four occasions in 1987--all were dinners during the 16-week period from September 4 through December 23.  Petitioner presented stubs to substantiate each of these four dinners.  None of these four stubs has a restaurant's name imprinted on it.  Each of these four stubs is in a style different from the other three.

There are numerous instances in which a single restaurant is represented by stubs of different styles.  There are numerous instances in which stubs of a single style with close receipt numbers are represented as coming from different restaurants.

The Crabtree Dealerships did not have a formal reimbursement policy for meals and entertainment expenses incurred by an employee.  The Crabtree Dealerships' informal policy was to reimburse an employee for meals and entertainment expenses if the employee was asked to incur the expense, but not otherwise.

Auto Expenses

In petitioner's diary he noted mileage amounts for each of the days on which he also noted business meals, intending to show how many business miles he had driven that day. The mileage amounts that petitioner so noted in his diary total 28,867. In petitioner's diary he noted parking and toll amounts for some of the days on which he also noted business meals, intending to show business parking and tolls. The parking toll amounts that petitioner so noted in his diary total $1,101.75.

The Crabtree Dealerships provided various demonstration vehicles to petitioner for his use during 1987. Petitioner had exclusive use of these vehicles while the vehicles were in his possession. Petitioner used these vehicles to commute to and from work and for other personal purposes. Petitioner did not incur any repair expenses relating to these vehicles. Petitioner paid for gasoline, for oil and other maintenance, and $35 per month rental fee.

Petitioner's Tax Return

Petitioner's 1987 tax return was prepared by Morris A. Levine (hereinafter sometimes referred to as Levine), a C.P.A., who signed the tax return as preparer on April 10, 1988. This tax return was filed timely.

Petitioner's 1987 tax return was the first tax return Levine prepared for petitioner. Levine prepared this tax return primarily from statements made by petitioner and not from

underlying books or records.  In particular, petitioner did not give petitioner's diary to Levine.

On his 1987 tax return, petitioner claimed the deductions shown in table 2.

Table 2

Form 2106

| | | |
|---|---:|---:|
| Meals and entertainment | $62,500 | |
|    Less: 20 percent | [1]12,500 | $50,000 |
| Vehicle expenses | | 4,016 |
| Parking fees, tolls, and local trans. | | 900 |
| Other business expenses | | 840 |
|     Total Form 2106 | | $55,756 |

Schedule A

| | |
|---|---:|
| Form 2106 | $55,756 |
| Tax preparation fees | 250 |
| | 56,006 |
|   Less: 2 percent A.G.I. | [2]3,350 |
|   Net miscellaneous deductions | 52,656 |

[1] Petitioner acknowledges the limitation, and showed it on his tax return.  Sec. 274(n).

[2] Petitioner acknowledges the limitation, and showed it on his tax return.  Sec. 67.  Both sides agree that $3,350 is the correct amount.

On the Form 2106 of his 1987 tax return, petitioner arrived at the $4,016 vehicle expenses amount shown in table 2, by the route described in table 3.

Table 3

| | |
|---|---:|
| Total mileage vehicle used | 35,000 mi. |
| Business use | 27,500 mi. |
| Percent of business use | 78.571 |
| "Average daily round trip commuting distance" | 10 mi.[1] |
| Total commuting | 2,500 mi.[2] |
| Other personal mileage | 5,000 mi. |

| | |
|---|---|
| Gasoline, oil, repairs, vehicle ins. | $3,361 |
| Vehicle rentals | 1,750 |
| Total | 5,111 |
| Total times percent business use (78.571) | 4,016 |

[1] The parties have stipulated that the distance between petitioner's home and his workplace is about 34 miles; the roundtrip is about 68 miles.

[2] Although the implication of the commuting items is that petitioner worked 250 days in 1987 (2,500 mi. divided by 10 mi. per day = 250 days) petitioner's diary, discussed supra, shows business meals on 304 days in 1987.

In the notice of deficiency, respondent disallowed all the deductions described supra in tables 2 and 3.

_____

The information in petitioner's diary and the stubs was not recorded at or near the times of the events described therein. Petitioner's diary and the stubs are not "adequate records" for purposes of section 274(d) and section 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6,1985). The record in the instant case does not include "sufficient evidence" for purposes of section 274(d) and section 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

Petitioner paid for some meals that were expenses of his trade or business as an employee.

Petitioner's business use of his vehicles was well under 1,000 miles.

The entire underpayment is due to petitioner's negligence.

OPINION

I. Deductions

Respondent contends that, under section 162(a), petitioner is not entitled to the claimed employee business expense deductions because petitioner has failed to substantiate that the expenses (1) were incurred and (2) were ordinary and necessary expenses of petitioner's trade or business as a Crabtree Dealerships business manager. See supra note 3. In addition, respondent contends that petitioner is not entitled to these deductions because of petitioner's failure to meet the strict record-keeping requirements of section 274(d).

Petitioner maintains that (1) he has satisfied the requirements of section 162(a) as to all his claimed employee business expense deductions, (2) he has satisfied the requirements of section 274(d) as to his claimed meals expenses deductions, and (3) section 274(d) does not apply to his claimed automobile and other nonmeal business expense deductions. Respondent apparently does not dispute petitioner's contention that section 274(d) does not apply to the claimed automobile and other nonmeal business expense deductions. But see secs. 274(d)(1), and (4), and 280F(d)(4)(A)(i), and the regulations thereunder.

We agree with respondent that petitioner has failed to establish that he is entitled to any of these deductions.

Deductions are a matter of legislative grace, and a taxpayer seeking a deduction has the burden of overcoming the presumption of correctness that attaches to respondent's factual determinations in the notice of deficiency. Rule 142(a); New Colonial Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 162(a)[5] allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business," including a trade or business as an employee. See, e.g., Lucas v. Commissioner, 79 T.C. 1, 6-7 (1982). Under section 6001 and section 1.6001-1(a) and (e), Income Tax Regs., a taxpayer must keep such permanent books of account or records as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown on the tax return. If the books and records are not adequate to establish the amounts of deductions or credits, but there is evidence that something more should be allowed than respondent allowed, then we are required to make some estimate of

---

[5]     Sec. 162 provides, in relevant part, as follows:

SEC. 162.   TRADE OR BUSINESS EXPENSES.

     (a)  In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

how much more should be allowed.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).

However, section 274(d)[6] provides that a deduction is not allowable under section 162 for meals and entertainment expenses, as well as certain other types of expenses, unless the taxpayer substantiates certain matters by "adequate records" or by "sufficient evidence" corroborating the taxpayer's own statement. Where section 274(d) applies, it overrules the "Cohan rule".

---

[6]     Sec. 274(d) provides, in relevant part, as follows:

SEC. 274.   DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC.,
            EXPENSES.

*   *   *   *   *   *   *

     (d)  Substantiation Required.--No deduction or credit shall be allowed--

*   *   *   *   *   *   *

        (2)  for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity,

*   *   *   *   *   *   *

unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, * * *

Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. 412 F.2d 201 (2d Cir. 1969).

We consider first petitioner's claimed business meals expenses, then his other claimed business expenses.

A. Business Meals Expenses

The parties agree that petitioner's claimed business meals expenses are not deductible if they fail to meet the requirements of section 274(d).

Petitioner's right to deduct his claimed meals and entertainment expenses turns on (1) whether the diary and the stubs constitute adequate records for purposes of section 1.274-5T(c)(2), Temporary Income Tax Regs., and if not, then (2) whether sufficient evidence to corroborate petitioner's own statements has been presented.  Sec. 1.274-5T(c)(3), Temporary Income Tax Regs.

(1) Adequate Records

Under section 1.274-5T(c)(2)(i), Temporary Income Tax Regs., in order to meet the "adequate records" requirement, a taxpayer is to maintain an account book, diary, statement of expenses, or similar record and documentary evidence (such as receipts, paid bills, or similar evidence) which, when combined, establish each element of the expense that section 274(d) requires to be established.  The account book, diary, statement of expense, or similar record must be prepared or maintained in such a manner

that each recording of an element of expenditure is made at or near the time of the expenditure. Sec. 1.274-5T(c)(2)(ii), Temporary Income Tax Regs. If the taxpayer lacks "adequate records", then the taxpayer is to provide a written or oral statement by the taxpayer containing sufficient information in detail as to each element set forth in section 274(d), as well as sufficient other corroborative evidence. Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs.

Petitioner's diary paints a picture of an indefatigable worker (the diary shows that he had business meals on 304 days, even though his tax return showed that he worked only 250 days during 1987) who was, if anything, overly cautious on his tax return (his diary showed the meals cost him $65,777.39, but he deducted only $62,500). Supra tables 3 and 2. The bill stubs present an ostensibly plausible backup, in a bewildering variety of styles, sizes, and colors.

However, neither the diary nor the stubs show (1) the business purpose of any of the claimed business meals or (2) the business relationship to petitioner of any of the people with whom he dined. In addition, substantially all the other information in the record about business meals contradicts the information that is presented in the diary and stubs. Mercer testified that he, not petitioner, paid for their dinners. Wright testified that she had many dinners with petitioner during

1987, and that petitioner paid for them, but petitioner's diary shows Wright as a guest only once. Sullivan went to lunch with petitioner many times, but not to dinner, during 1987; petitioner's diary shows Sullivan as petitioner's guest for four dinners and only three lunches. Petitioner's diary shows 11 dinners at Frank's Steak in 1987; 9 were purportedly substantiated by stubs. However Frank's Steaks did not open until July 1988, and the predecessor restaurant, The Peculiar Penguin, closed in January 1987. Also, the stubs petitioner presented to substantiate the Frank's Steaks business meals were of a style that had never been used by either Frank's Steaks or The Peculiar Penguin. In addition, our findings set forth numerous inconsistencies among the stubs.

Petitioner's cause is not helped by his testimony that he relied on stubs that he filled in, even where he had paid the bill by credit cards and thus had credit card receipts. He testified that the stubs that he filled in were just as trustworthy as credit card receipts.

The record does not include meaningful evidence to corroborate the reliability of petitioner's diary or stubs. Nor has petitioner offered as adequate explanation for the inaccuracies and inconsistencies which are identified with respect to the diary and stubs. Based on the record, we conclude, and we have found, that petitioner's diary and the

- 21 -

stubs are not adequate records for purposes of section 274(d).

Sec. 1.274-5T(c)(2), Temporary Income Tax Regs.

On brief, petitioner attempts to counter the Frank's Steaks evidence as follows:

> The one restaurant representative called by respondent, Brent Gindel, the owner of a restaurant known as Frank's Steaks, was unable to identify the receipts provided by the petitioner.  Since the evidence showed there were other restaurants known as "Frank's" in the New York metropolitan area that were open during 1987, Mr. Gindel's testimony is incompetent to establish anything concerning the restaurant receipts proffered by Strong.

The record indicates that there were only two other restaurants in the New York City metropolitan area in 1987 with "Frank's" in the name.  One of them, Frank's Pizzeria, was in Huntington, about 8-10 miles from the Westbury-Jericho location of Frank's Steaks.  The other, Frank's, was in lower Manhattan, on the west side.

Before Brent Gindel testified, petitioner testified that the "Frank's" in question was "on the Westbury Jericho border on Long Island".  About half an hour later, petitioner testified that the "Frank's" in question was "I believe in Westbury."  Although petitioner's responses between these two occasions were somewhat evasive, he did not suggest, in his pre-Gindel testimony, that the "Frank's" or "Frank's Steak" referred to in his diary and the stubs was in any other location than the Westbury-Jericho border. Two days after Gindel's testimony, petitioner was on the witness stand again.  On this occasion, counsel for both sides "danced

around" the question of what petitioner had stated about Frank's in a response to an interrogatory. Because of the form of respondent's counsel's questions, and respondent's counsel's tactical decision to not offer into evidence the interrogatory and petitioner's written response thereto, the evidence of record is not clear as to petitioner's statements in discovery. However, it is clear that, up to that point in the trial, petitioner had identified the Frank's Steaks mentioned in his diary and on some of the stubs as the restaurant on the border of Westbury and Jericho. Also, Brent Gindel's testimony clearly contradicted petitioner's testimony. This point was important-- petitioner claimed in his diary to have taken 32 different people to Frank's in 1987, and to have spent more than $50 per person per meal there that year. Supra table 1. Respondent had informed petitioner some 9 months before the trial that Frank's Steaks did not open until 1988, and so was not open on the relevant 1987 dates shown in petitioner's diary and on the stubs. In addition, petitioner had 2 days after the Gindel testimony to check records or call any of his 32 claimed dinner guests. Yet petitioner did not take this or any other opportunity to identify the correct location of the Frank's Steaks where he took his claimed dinner guests and incurred his claimed expenses. We conclude that petitioner did not explain or rebut because there was no plausible explanation or rebuttal. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162

F.2d 513 (10th Cir. 1947).  This strongly suggests that petitioner's diary and stubs (1) are materially false, and (2) were not substantially contemporaneous in 1987, but were constructed well after August 1988 when the restaurant first opened as Frank's Steaks.

We conclude, and we have found, that petitioner's diary and the stubs are not "adequate records" for purposes of section 274(d) and section 1.274-5T(c)(2), Temporary Income Tax Regs.

(2) Corroboration

Substantiation by "sufficient evidence corroborating the taxpayer's own statement" requires the cost, time, place, and date of the expenditure to be corroborated by "direct evidence," while business purpose or business relationship may be shown by "circumstantial evidence."  Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs.

The witnesses who testified about sharing meals with petitioner were unable to support the specifics of petitioner's testimony or diary.  None of the witnesses could identify (1) any particular date on which they had dined with petitioner, (2) where they had eaten, (3) who else was present during the meal, or (4) the amount of any bill.  Some of the witnesses could not even recollect ever being at some of the restaurants that, according to the diary, they had dined at, nor could they recollect ever having met the people who, according to the diary, shared a meal with them.  Indeed, with the exception of general

assertions by some of the witnesses that they attended meals with petitioner, the testimony did not provide an adequate description of the circumstances surrounding any of the meals. Not only was there a total failure of direct evidence to corroborate petitioner's statement as to cost, time, place, and date, but some of the witnesses' testimony directly contradicted at least some of petitioner's statements. See supra the discussion of Mercer's, Wright's, and Sullivan's testimony.

Thus, we conclude, and we have found, that the record does not include "sufficient evidence" of corroboration for purposes of section 274(d) and section 1.274-5T(c)(3), Temporary Income Tax Regs.

Petitioner argues that he should not be held to strict compliance with section 274(d), because important records have become unavailable. The records that petitioner claims are unavailable are the Crabtree Dealerships' records of who bought automobiles from the Crabtree Dealerships during 1987. Petitioner contends that he is unable to obtain those records because the Crabtree Dealerships were sold sometimes after 1987.

Section 1.274-5T(c)(5), Temporary Income Tax Regs., provides that if records have become unavailable through no fault of the taxpayer, then the taxpayer is permitted "to substantiate a deduction by reasonable reconstruction of his expenditures". In order to qualify for relief under this provision, petitioner must establish that (1) at one time he possessed adequate records and

(2) his present lack of records is due to fire, flood, or other casualty beyond his control. <u>Gizzi v. Commissioner</u>, 65 T.C. 342, 345 (1975).[7] There is not any evidence that (1) petitioner ever possessed the records in question or (2) if the records were available, then the records would contain sufficient evidence to satisfy the requirements of section 274(d). Even if the records of who bought automobiles from the Crabtree Dealerships in 1987 were available, then petitioner's records would still have all the problems discussed <u>supra</u>, that caused us to conclude that petitioner's diary and the stubs are materially false and were not substantially contemporaneous. Thus, petitioner is not entitled to relief under section 1.274-5T(c)(5), Temporary Income Tax Regs.

### (3) Conclusions

We believe that it is more likely than not that petitioner's diary and the stubs were created by petitioner well after the events they purport to describe. We are satisfied that petitioner did, indeed, have some business meals in 1987 for which deductions would have been allowable if contemporaneous records had been kept. However, petitioner failed to keep contemporaneous records, and his efforts to create

---

[7] Sec. 1.274-5T(c)(5), Temporary Income Tax Regs., which applies to 1986 and later years (see sec. 1.274-5T(a), Temporary Income Tax Regs.), is identical in all material respects with sec. 1.274-5(c)(5), Income Tax Regs., the provision interpreted in <u>Gizzi v. Commissioner</u>, 65 T.C. 342, 345 (1975).

contemporaneous-appearing records have succeeded only in destroying what modicum of credibility his testimony might otherwise have had.[8]

Petitioner has wholly failed to meet the requirements of section 274(d) with respect to the business meal expenses. As a result, he is not permitted to deduct any of his claimed business meal expenses.

Under these circumstances, it is not necessary to examine the details of section 162(a) with respect to these expenses.

We hold for respondent on this issue.

B. Other Business Expenses

See supra tables 2 and 3 for petitioner's other claimed business expenses. The "Other business expenses" category on table 2 evidently consists of telephone expenses.

Expenses incurred in going from home to work, and from work to home, are generally treated as nondeductible personal expenses. Sec. 262; Commissioner v. Flowers, 326 U.S. 465 (1946); Green v. Commissioner, 59 T.C. 456, 458 (1972), secs. 1.262-1(b)(5), 1.162-2(e), Income Tax Regs. However, expenses

---

[8]     Our qualms about the credibility of petitioner's testimony may be illustrated by his statements about the number of days he worked. When confronted with his diary, he testified that he worked "well over 300 days." When confronted with his tax return, he testified that "that was a guess when I said 300", and that he probably went to work about 250 days in 1987. When asked how to reconcile his diary and his tax return, he responded--

        I don't know, Your Honor, probably between 250 and 300. I can't be certain.

incurred in going from one workplace to another are generally treated as trade or business expenses deductible under sec. 162(a).  E.g., <u>Steinhort v. Commissioner</u>, 335 F.2d 496, 504-505 (5th Cir. 1964), affg. and remanding T.C. Memo 1962-233; <u>Dancer v. Commissioner</u>, 73 T.C. 1103 (1980).

The claimed business use of the vehicles that the Crabtree Dealerships leased to petitioner is for business meetings (such as with bank employees) and for demonstrations to customers and potential customers.  Although we are satisfied that petitioner did have business meals in 1987, our efforts to determine the amount of business usage of petitioner's vehicles and the amount of petitioner's vehicle-related expenses have largely foundered on the inadequate record herein and on the contradictions in petitioner's contentions.

For reasons explained <u>supra</u>, we have concluded that petitioner's diary and stubs are unreliable.  In addition, there is no evidence in the record as to the locations of many of the restaurants named in the diary and on the stubs, and no evidence as to locations of any nonmeal business meetings, so we could not check on the mileage figures petitioner wrote in his diary. Although we are satisfied that petitioner incurred some vehicle-related expenses, we do not have any reliable evidence as to the $5,111 he claims to have spent on the vehicles.  <u>Supra</u> table 3. Also, we have no satisfactory explanation of why petitioner claims that his "Average daily round trip commuting distance" is

only 10 miles, in light of the parties' stipulation that the one-way distance between his home and his workplace is about 34 miles. Supra table 3. Finally, we do not have any explanation of why on his tax return petitioner claims to have used his auto to go to work on 250 days of the year (average daily round trip commute of 10 mi., divided into total 1987 commuting distance of 2,500 mi.), while in his diary, petitioner claims to have had business meals on 304 days.

Even if we were to find that petitioner substantiated some vehicle-related expenses, any such allowance would be well under $1,000. We note that both sides agree that the 2-percent floor on miscellaneous itemized deductions is $3,350. Supra table 2, note 2. Table 2 shows that, even if we were to allow $1,000 vehicle expenses, when added to petitioner's remaining claimed miscellaneous deductions it would not be enough to enable petitioner to pass the $3,350 threshold; thus petitioner is not entitled to any net miscellaneous deductions. Under these circumstances, it is not necessary for us to set a more precise number on petitioner's vehicle expenses, nor on his parking fees, etc., nor on his other business expenses. We have already deemed petitioner to have conceded the claimed tax preparation fees. Supra note 2.

We hold for respondent on this issue.

## II.  Additions to Tax

### A.  Section 6653(a)

Section 6653(a)(1)(A)[9] imposes an addition to tax of 5 percent of the underpayment if any part of the underpayment is due to negligence or disregard of rules or regulations.  Section 6653(a)(1)(B) imposes an additional addition to tax equal to 50 percent of the interest payable under 6601 with respect to the portion of the underpayment attributable to negligence, etc. Petitioner has the burden of proving error in respondent's determination that these additions to tax should be imposed against him.  Goldman v. Commissioner, 39 F.3d 402, 407 (2d Cir.

---

[9]     Sec. 6653 provides, in relevant part, as follows:

SEC. 6653.   ADDITIONS TO TAX FOR NEGLIGENCE AND FRAUD.

> (a)  Negligence.--
>     (1)  In general.--If any part of any underpayment * * * is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to the sum of--
>         (A)  5 percent of the underpayment, and
>         (B)  an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of such underpayment which is attributable to negligence for the period beginning on the last date prescribed by law for payment of such underpayment * * * and ending on the date of the assessment of the tax * * *.

The later amendments of this provision by sec. 1015(b)(2)(A) of the Technical and Miscellaneous Revenue Act of 1988 (Pub. L. 100-647, 102 Stat. 3342, 3569), and by sec. 7721(a) of the Omnibus Budget Reconciliation Act of 1989 (OBRA 89--Pub. L. 101-239, 103 Stat. 2106, 2395) do not affect the instant case.

As a result of OBRA 89, the substance of former sec. 6653(a) now appears in subsecs. (b)(1) and (c) of sec. 6662.

1994), affg. T.C. Memo. 1993-480; Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).

Broadly speaking, for purposes of this provision, negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947-948 (1985). Petitioner contends that he relied on his tax return preparer, Levine, to prepare the 1987 tax return, and, thus, he neither was negligent, nor acted in intentional disregard of the rules or regulations. Respondent contends that petitioner was negligent as to the entire underpayment and thus, the additions to tax under section 6653(a)(1) should be imposed.

We agree with respondent.

Petitioner was obligated to keep and present adequate and accurate records of his trade or business expenses. Sec. 6001; Stovall v. Commissioner, 762 F.2d 891, 895 (11th Cir. 1985), affg. T.C. Memo. 1983-450; Crocker v. Commissioner, 92 T.C. 899, 917 (1989). An ordinarily prudent taxpayer who contends that he spent more than $60,000, supra table 2, on employee trade or business expenses (about 40 percent of his $163,289 gross receipts from that trade or business) would keep such records and present them to his or her tax return preparer. Petitioner's diary and stubs are inadequate, and they conflict with the facts in material respects. In addition, petitioner testified that he did not give his diary to Levine, his tax return preparer.

Petitioner's failure to do what an ordinarily prudent taxpayer would do is negligence. This negligence led to the entire deficiency in the instant case. Thus, the entire deficiency (in the instant case, the entire underpayment) is attributable to petitioner's negligence.

Levine testified that petitioner presented "papers" to Levine and gave certain information orally to Levine, but Levine could not recall the specifics. Petitioner's testimony on this matter is consistent with, and no more detailed than, Levine's testimony. The following colloquy is illustrative:

> THE COURT: Mr. Strong, it appears that Mr. Levine prepared your 1987 tax return, is that correct?

> THE WITNESS: That's correct.

> THE COURT: When he prepared your tax return, did you simply give him the numbers or did you give him the documents and he figured out the numbers from the documents?

> THE WITNESS: No, I gave him the numbers. I provided the information to him.

> THE COURT: Did you give him the diary?

> THE WITNESS: No, sir.

> THE COURT: So, did you then total the information on the diary? You add up the mileage, the dollar amounts and so on?

> THE WITNESS: Yes, Your Honor.

As a general rule, the duty of filing accurate tax returns cannot be avoided by placing responsibility on an agent. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987); Pritchett v. Commissioner, 63 T.C. 149, 174 (1974). Because the record does

not include evidence that petitioner provided complete and accurate information to Levine, it is not necessary for us to explore in the instant case whether he could have avoided the negligence addition to tax by providing this information to Levine.  See discussions in <u>Metra Chem Corp. v. Commissioner</u>, 88 T.C. at 662; <u>Pritchett v. Commissioner</u>, 63 T.C. at 174.

We hold for respondent on this issue.

## B.  Section 6661

Section 6661(a)[10] imposes an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of tax.  <u>Pallottini v. Commissioner</u>, 90 T.C. 498 (1988).  An understatement is substantial if it exceeds the greater of 10 percent of the correct tax or $5,000.  Sec. 6661(b)(1)(A).  (Our holdings make it clear that petitioner has a substantial understatement for 1987.)

If an item is not attributable to a tax shelter, then the understatement shall be reduced on account of the item, and the addition to tax accordingly reduced, if (1) the taxpayer's

---

[10]    Sec. 6661 provides, in relevant part, as follows:

SEC. 6661.    SUBSTANTIAL UNDERSTATEMENT OF LIABILITY.

(a)  Addition to Tax.--If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement.

Sec. 6661 was repealed by sec. 7721(c)(2) of OBRA 89, Pub. L. 101-239, 103 Stat. 2106, 2399.  The substance of former sec. 6661 now appears as secs. 6662(b)(2), 6662(d), and 6664(c)(1).

treatment of the item was based on substantial authority, or (2) the taxpayer adequately disclosed on the tax return or in a statement attached to the tax return the relevant facts affecting the item's tax treatment.  Sec. 6661(b)(2)(B).

Respondent has authority to waive this addition to tax, if the taxpayer shows there was reasonable cause for the understatement and the taxpayer acted in good faith.  Sec. 6661(c).

Petitioner has the burden of proving error in respondent's determination that such an addition to tax should be imposed against him.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. at 115. Petitioner has not shown (1) that he had substantial authority for the position taken on his tax return, (2) that he adequately disclosed his position in a statement attached to the tax return or on the tax return, (3) that he had reasonable cause for the understatement, or (4) that he acted in good faith.  Thus, petitioner has failed to carry his burden of proof.

We hold for respondent on this issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.